**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

JAN - 3 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,
100 F Street, N.E.
Washington, DC 20549

                          **Applicant,**

                   **v.**

**BRETT COOPER,**
1609 Larchmont Place
Mt. Laurel, NJ 08054

**DREAM HOLDINGS, LLC, a/k/a DREAM**
**HOLDINGS and DREAM HOLDINGS II, LLC,**
12 Debrosses Street
New York, NY 10013
     and
1640 Nixon Drive
Moorestown, NJ 08057

**FORTITUDE INVESTING, LLC,**
106 Catbriar Court
Summerville, SC 29485
     and
1640 Nixon Drive
Moorestown, NJ 08057

**FII-LTD, a/k/a FIXED INCOME INVESTMENTS**
**LLC,**
1640 Nixon Drive
Moorestown, NJ 08057

**GLOBAL FUNDING SYSTEMS, LLC,**
12 Debrosses Street
New York, NY 10013

**MUSE OF DREAMS, LLC,**
12 Debrosses Street
New York, NY 10013

                        **Respondents.**

Case: 1:13-mc-00007
Assigned To : Collyer, Rosemary M.
Assign. Date : 1/3/2013
Description: Miscellaneous

**SECURITIES AND EXCHANGE COMMISSION'S *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE AND FOR ORDER TO ENFORCECOMPLIANCE WITH SUBPOENAS *DUCES TECUM* AND *AD TESTIFCANDUM***

Applicant, the Securities and Exchange Commission (the "Commission" or "SEC"),

makes this *ex parte* application for an Order to Show Cause why Respondents Brett Cooper,

Dream Holdings, LLC, a/k/a Dream Holdings and Dream Holdings II, LLC ("Dream Holdings,

LLC"), Fortitude Investing, LLC, FII-Ltd, a/k/a Fixed Income Investments LLC ("FII-Ltd"),

Global Funding Systems, LLC, and Muse of Dreams, LLC ("Respondents") should not be

ordered to comply with subpoenas *duces tecum* and *ad testificandum* issued by the Commission

on March 27, 2012, and properly served upon the Respondents.  This Application is based upon

the accompanying Memorandum of Points and Authorities, the Declaration of Christopher

McLean ("McLean Decl.") and exhibits thereto.  A proposed order is submitted herewith.[1]

DATED:  January 3, 2013

Respectfully submitted,

James Kidney (DC Bar ID No. 252924)
Timothy N. England
Christopher McLean

Attorneys for Applicant
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
Tel:      (202) 551-4441 (Kidney)
Facsimile: (202) 772-9240

---

[1] The application is filed as a related case to *SEC v. The Milan Group, Inc.*, et al., 11-cv-02132 (D. D.C.) (RCM), filed Nov. 30, 2011.  Cooper and GFS are relief defendants in that action. GFS is in default.  The Milan investigation led the Commission to further investigation of Cooper's activities.

kidneyj@sec.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Applicant, | |
| v. | MISC. NO. _____ |
| BRETT COOPER, et al. | |
| Respondents. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE SECURITIES AND EXCHANGE COMMISSION'S *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE AND TO ENFORCE COMPLIANCE WITH SUBPOENAS *DUCES TECUM* AND *AD TESTIFICANDUM***

James A. Kidney (DC Bar ID No. 252924)
Timothy N. England
Christopher McLean
Attorneys for Applicant
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC
Tel:        (202) 551-4441
Facsimile: (202) 772-9240
kidneyj@sec.gov

# TABLE OF AUTHORITIES

Cases

CFTC v. Harker, 615 F.Supp. 420, 420 (D.D.C. 1985)                                5

Endicott Johnson Corp. v. Perkins, 317 U.S. 501 (1943)                           2, 5

FTC  v. Invention Submission Corp., 965 F.2d 1086 (D.C. Cir. 1992)                5

Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508,

   1517 (D.C. Cir. 1993)                                                    6

Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186 (1946)                     2

SEC v. Arthur Young & Co., 584 F.2d 1018, 1023-24 (D.C. Cir. 1978)               5

SEC v. Blackfoot Bituminous, Inc., 622 F.2d 512 (10th Cir. 1980) at 514          6

SEC v. Brigadoon Scotch Dist. Co., 480 F.2d 1047, 1056 (2nd Cir. 1973)           6

SEC v. Dresser Indus., 628 F.2d 1368, 1379 (D.C. Cir. 1980)                      5

SEC v. First Sec. Bank of Utah, 447 F.2d 166, 168 (10th Cir. 1971)               4

SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735 (1984)                              2, 5

SEC v. Kingsley, 510 F. Supp. 561 (D.D.C. 1981)                                  5

SEC v. Lavin, 111 F.3d  921, 925-26 (D.C. Cir. 1997)                             4

SEC v. Sprecher, 594 F.2d 317, 319-20 (2d Cir. 1979)                             4

U.S. v. Powell, 379 U.S. 48 (1964)                                              2

United States v. Morton Salt Co., 338 U.S. 632 (1950)                           2

Federal Statutes

15 U.S.C. §77v(b)                                                      4

Securities Exchange Act [15 U.S.C. § 78u(b)]                      4, 5

Securities Exchange Act [15 U.S.C. § 78u(c)]                         4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

**Applicant,**

**v.**

**BRETT COOPER, et al.**

**Respondents.**

**MISC. NO. _____**

## MEMORANDUM OF LAW IN SUPPORT OF THE SECURITIES AND EXCHANGE COMMISSION'S *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE AND TO ENFORCE COMPLIANCE WITH SUBPOENAS *DUCES TECUM* AND *AD TESTIFICANDUM*

### I.       INTRODUCTION

The staff of the Securities and Exchange Commission (the "SEC" or "Commission") served Respondents Brett Cooper ("Cooper"), Dream Holdings, LLC, a/k/a Dream Holdings and Dream Holdings II, LLC ("Dream Holdings, LLC"), Fortitude Investing, LLC, FII-Ltd, a/k/a Fixed Income Investments LLC ("FII-Ltd"), Global Funding Systems, LLC, and Muse of Dreams, LLC ("Respondents ") with properly issued subpoenas *duces tecum* and *ad testificandum* in a duly authorized investigation.  Respondents have, without legal or practical justifications, failed to produce documents, and Cooper has failed appear for testimony.  In fact, Respondents have failed to communicate with the Commission's staff despite repeated attempts by the staff to schedule production and testimony at mutually convenient times and to discuss any mechanical or legal issues Cooper might have with the subpoenas.

The Commission is exercising its statutory authority to investigate possible violations of the federal securities laws. The documents and testimony subpoenaed from the Respondents are relevant to the investigation. Accordingly, the Commission has complied with all administrative procedures relating to the issuance of its subpoenas and has fulfilled all requirements necessary for enforcement of the subpoenas. *See U.S. v. Powell*, 379 U.S. 48 (1964); *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501 (1943); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946); *United States v. Morton Salt Co.*, 338 U.S. 632 (1950). *See also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984). Therefore, the Court should order all Respondents to produce documents and order Cooper to appear and provide testimony pursuant to the subpoenas.

## II.   THE COMMISSION'S INVESTIGATION

On December 22, 2011, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony in a matter entitled *In the Matter of Certain Leased Instruments* ("CLI"), File No. HO-11813 (the "Formal Order").[1] Declaration of Christopher McLean, ¶2, attached hereto as Exhibit 1 (hereinafter "McLean Decl."). The Formal Order authorizes members of the SEC staff to investigate whether the antifraud, broker-dealer registration, and certain other provisions of the federal securities laws have been or are being violated by persons or entities in connection with the offer, sale, and/or purchase of securities. *Id.* In particular, the SEC is investigating whether Cooper or his entities offered or sold "prime

---

[1]     Because the investigation is non-public, the Commission has not attached a copy of the Commission's Order of Private Investigation to its pleadings. It will make available a copy of the Commission's Order for *in camera* inspection at the Court's request.

bank" securities in the form of leased bank instruments and other financial instruments since at least January 2009 in furtherance of a scheme to defraud investors and misappropriate funds. *Id.*

At various times since at least January 2009, Respondent Cooper, directly and indirectly, solicited investors and received investor funds in connection with securities transactions involving bank instruments. (McLean Decl. ¶ 4). Companies that Cooper owns and controls -- Respondents Dream Holdings, LLC, Fortitude Investing, LLC, FII-Ltd, Global Funding Systems, LLC, and Muse of Dreams, LLC -- received investor funds from these securities transactions, and at least two of these companies entered into contractual arrangements with investors. *Id.* Neither Cooper nor any of his companies are registered broker-dealers. *Id.* The securities purportedly offered and sold by Cooper and his companies are not registered with the SEC nor subject to an exemption from registration. *Id.* Investors who provided funds to Cooper or his companies have not received anything of value in return for their investments. *Id.* Accordingly, the SEC believes Cooper and his companies will have highly responsive documents and testimony on these issues, which are central to the investigation. All Respondents are likely sources of documents highly relevant to the SEC investigation. Cooper plainly has knowledge of these matters and his own role in executing these likely frauds.

Beginning on March 27, 2012, and continuing through July 27, the SEC staff has made repeated efforts to contact Cooper regarding the subject subpoenas. He was successfully served with the subpoenas at the last address known to the SEC on March 28, 2012. As discussed in detail in the McLean declaration filed herewith, at paragraphs 6-17, the SEC staff made numerous good faith attempts to communicate with Cooper regarding the subpoenas. Cooper clearly has been served with the subpoenas, clearly knows who and how to contact the SEC staff,

3

and clearly has decided to simply ignore the subpoenas and the communications from the staff.

Like Cooper, as of the date of filing this application with the Court, all corporate respondents

have failed to respond to the subpoenas in any manner.

## III.   THE COURT SHOULD ENFORCE THE SUBPOENA

### A.   Jurisdiction

Congress has authorized the Commission to seek a court order compelling compliance if

a respondent refuses to comply with its subpoenas.  Jurisdiction is explicitly conferred on the

district courts to enforce subpoenas upon application by the Commission.  *See*, Section 22(b) of

the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77v(b)]; Section 21(c) of the Securities

Exchange Act ("Exchange Act") [15 U.S.C. § 78u(c)].[2]

Jurisdiction and venue are proper in this Court.  Section 21(c) of the Exchange Act

provides that the Commission may make an application for subpoena enforcement in any

jurisdiction where its investigation is being carried on or where a person to whom the subpoena

is issued resides or does business.  The CLI investigation is being carried out at the SEC

Washington, D.C. Office.  Accordingly, venue lies in this District and this Court may properly

exercise jurisdiction over this matter.

### B.   The Commission Has Met Its Burden for Enforcement of the Subpoenas

Judicial enforcement of an administrative subpoena may be had where the agency can

show that its "investigation is being conducted pursuant to a legitimate purpose, that the

---

[2]   Commission subpoena enforcement proceedings are generally summary in nature. *See, e.g., SEC v. Lavin*, 111 F.3d  921, 925-26 (D.C. Cir. 1997)*; SEC v. First Sec. Bank of Utah*, 447 F.2d 166, 168 (10th Cir. 1971);  *SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979).

information sought is relevant to that purpose [...] and that the administrative prerequisites have been exhausted." *CFTC v. Harker*, 615 F.Supp. 420, 424 (D.D.C. 1985). The Commission has met all of the requirements for enforcement of the subpoenas issued to Cooper and his companies.

*First*, the Commission's investigation is being conducted for a legitimate purpose pursuant to authority vested in the Commission by Congress. *See* Section 21(b) of the Exchange Act [15 U.S.C. § 78u(b)] (empowering the Commission to subpoena witnesses, compel their attendance, take evidence, and require the production of books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 740 (1984); *SEC v. Dresser Indus.*, 628 F.2d 1368, 1379 (D.C. Cir.) *en banc, cert. denied*, 449 U.S. 993 (1980); *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1023-24 (D.C. Cir. 1978).

*Second*, the testimony sought by the subpoenas is reasonably relevant to, and within the scope of, the Commission's investigation. Information is reasonably relevant to an investigation when it is "not plainly incompetent or irrelevant to any legal purpose." *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992); *SEC v. Kingsley*, 510 F. Supp. 561, 563 (D.D.C. 1981) (citing *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)). The staff has determined that the Respondents documents and Cooper's testimony are relevant to the Commission's investigation. At various times since January 2009, Cooper and his companies solicited investors and/or received investor funds in connection with securities transactions involving bank instruments (McLean Decl., ¶4). Investors have received nothing of value for their investments and have been unable to get their money back. *Id.* Neither Cooper nor his

companies are registered broker-dealers, and the securities at issue are not registered with the

SEC nor exempt from registration.  *Id.*  Given that Cooper and his companies solicited investors

and/or received these funds and would have documents and knowledge pertaining to the

disposition of the funds and nature of the investments, the documents of all Respondents and the

testimony of Cooper are relevant to determining his and other persons' possible involvement in

these securities transactions, which could constitute violations of the antifraud and other

provisions of the federal securities laws.

    *Finally*, the Commission has met the administrative prerequisite to issuing the subpoenas.

A Commission order of investigation is the only administrative prerequisite to the

commencement of formal investigative proceedings.  *See SEC v. Blackfoot Bituminous, Inc.*, 622

F.2d 512 (10th Cir. 1980) at 514 (citing the Rules of Practice Relating to Investigations, 17

C.F.R. §§ 203.1 *et seq.* (1979)).  The Commission has met its threshold requirements for

enforcement of the subpoenas issued to the Respondents.  Respondents now bear the burden for

establishing any claim that the subpoenas are unreasonable, and this burden "is not easily met."

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508,

1517 (D.C. Cir. 1993); *SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047, 1056 (2nd Cir. 1973).

### IV.    CONCLUSION

For the reasons stated above, the Court should issue the proposed Order to Show Cause.


Date:  January 3, 2013                                    Respectfully submitted,

                                                          _____
                                                          James Kidney (DC Bar ID No. 232924)
                                                          Timothy N. England
                                                          Christopher McLean


                                                          Attorneys for Applicant
                                                          Securities and Exchange Commission
                                                          100 F Street, N.E.
                                                          Washington, DC
                                                          Tel:       (202) 551-4441
                                                          Facsimile: (202) 772-9240
                                                          kidneyj@sec.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE**<br>**COMMISSION,**<br><div align="center">**Applicant,**</div><br><div align="center">**v.**</div><br>**BRETT COOPER, et al.,**<br><div align="center">**Respondents.**</div> | **MISC. NO. _____** |

**DECLARATION OF CHRISTOPHER MCLEAN IN SUPPORT OF THE SECURITIES**
**AND EXCHANGE COMMISSION'S *EX PARTE* APPLICATION FOR ORDER TO**
**SHOW CAUSE AND TO ENFORCE COMPLIANCE**
**WITH SUBPOENAS *DUCES TECUM* AND *AD TESTIFANCDUM***

I, Christopher McLean, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

     1.     I am employed as an attorney with the Division of Enforcement of the United

States Securities and Exchange Commission ("SEC" or "Commission") at its Washington, D.C.

Office.  I have personal knowledge of the facts set forth below, either through direct

communication with the parties or my knowledge of the investigation.

     2.     On December 22, 2011, the Commission issued an Order Directing Private

Investigation and Designating Officers to Take Testimony in an investigation entitled *In the*

*Matter of Certain Leased Instruments* ("CLI"), Commission File No. HO-11813 (the "Formal

Order").  The Formal Order authorizes the Commission's staff to investigate whether the

antifraud, broker dealer registration, and certain other provisions of the federal securities laws

have been or are being violated by persons or entities in connection with the offer, sale and/or

purchase of securities.  Pursuant to the Formal Order, the staff is investigating whether, among

other things, certain persons and individuals offered "prime bank" securities in the form of

leased bank instruments and other financial instruments to defraud investors since at least January 2009.[1]

3.      Pursuant to Section 19(c) of the Securities Act of 1933 and Section 21(b) of the Securities Exchange Act of 1934, the Formal Order designates me and certain other members of the Commission's staff as officers for the purpose of the CLI investigation, and empowers said officers to, among other things, administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law. The Commission's staff in the SEC's Washington, D.C. Office is conducting the investigation.

4.      At various times since at least January 2009, Respondent Brett Cooper ("Cooper") directly and indirectly solicited investors and received investor funds in connection with securities transactions involving bank instruments. At least five companies that Cooper controlled and owned received investor funds, directly or indirectly, from these securities transactions, and at least two of these companies entered into contractual arrangements with investors. These companies are as follows, with Cooper listed in corporation records either as the sole executive or the registered agent:

> a.  Global Funding Systems, LLC is a limited liability company formed in North Carolina in 2011 with an active status and a Wyoming limited

---

[1] Because the non-public investigation is ongoing, the Commission's staff has not attached a copy of the Formal Order.  If requested by the Court, the staff will provide a copy for the Court's *in camera* review.

liability company formed in 2010 with an inactive status, having the address of 12 Debrosses Street, New York, NY 10013;[2]

b. Fortitude Investing, LLC is a limited liability company formed in South Carolina in 2011 in good standing with the address of 106 Catbriar Court, Summerville, SC 29485, and a limited liability company formed in New Jersey in 2009 with an active status at the address of 1640 Nixon Drive, Moorestown, NJ 08057

c. FII-Ltd, a/k/a Fixed Income Investments LLC, ("FII-Ltd") is a company formed in New Jersey in 2009 with an expunged status at the address of 1640 Nixon Drive, Moorestown, NJ 08057;

d. Dream Holdings, LLC is a company formed in 2011 at the address of 12 Debrosses Street, New York, NY 10013, and is also known as Dream Holdings and Dream Holdings II, LLC, ("Dream Holdings, LLC") a limited liability company formed in New Jersey in 2010 with an active status located at the address of 1640 Nixon Drive, Moorestown, NJ 08057; and

e. Muse of Dreams, LLC is a name under which Dream Holdings, LLC does business and is located at the address of 12 Debrosses Street, New York, NY 10013.

---

[2] The application is filed as a related case to *SEC v. The Milan Group, Inc.*, et al., 11-cv-02132 (D. D.C.) (RCM), filed Nov. 30, 2011. Cooper and GFS are relief defendants in that action. GFS is in default. The Milan investigation led the Commission to further investigation of Cooper's activities.

5.     Neither Respondent Cooper nor Respondents Dream Holdings, LLC, Fortitude Investing, LLC, FII-Ltd, Global Funding Systems, LLC, or Muse of Dreams, LLC are registered broker dealers, and none of the securities offered by Respondents are registered with the Commission or subject to an exemption from registration.  The investors known to date have not received the promised returns, securities of any value, return of their initial investments, nor return of any funds.  The Commission's staff is investigating, among other potential violations, whether these solicitations were made and funds were obtained through false or misleading representations and in furtherance of a scheme to defraud investors.

6.     On March 27, 2012, the Commission's staff issued subpoenas to Dream Holdings, LLC, Fortitude Investing, LLC, FII-Ltd, Global Funding Systems, LLC, and Muse of Dreams, LLC requiring the production of documents.  Also on March 27, 2012, the Commission's staff issued a subpoena to Brett Cooper requiring the production of documents and his appearance for testimony. (Exhibit A)  The subpoenas were sent in an envelope by UPS for overnight delivery to Cooper's then known home address in Moorestown, New Jersey (the "Moorestown address").  The return date for the production of documents under all the subpoenas was April 11, 2012, and Cooper was required to testify on April 25, 2012.

7.     On March 28, 2012, the subpoenas were delivered to Cooper and his companies.  Cooper accepted delivery and signed for the package containing the subpoenas, confirming their receipt.  (Exhibit B)

8.     Cooper and his companies were required to produce documents by April 11, 2012 and failed to do so.

9.     On April 17, 2012, I sent letters to Cooper and each of his companies at the Moorestown address noting that they failed to produce documents or respond to the subpoenas,

and that Cooper was required to appear for testimony on April 25, 2012. (Exhibit C) The letters stated that the staff intended to take the steps necessary to enforce the subpoenas if Cooper and his companies failed to contact me immediately to seek an acceptable extension to produce the required documents. After four attempts, UPS was unable to deliver the letters and returned them to the Commission.

10.     On April 25, 2012, Assistant Director Timothy England sent Cooper an email at brettcooper@live.com requesting that Cooper call him that day or the next day. (Exhibit D) This was the same email address England had used to communicate previously with Cooper. Cooper did not respond.

11.     On May 1, 2012, England and I called Cooper's cell phone (609-760-0325) and England left a voicemail requesting that Cooper call the staff immediately to discuss his and his companies' failure to produce documents and his failure to appear for testimony. England informed him that the staff intended to take steps to enforce the subpoenas if he failed to contact the staff. This cell phone number was the same number Cooper had provided to England in March 2012 (see Exhibit D) and that Cooper had used to contact the staff. Cooper did not respond.

12.     On May 1, 2012, England sent Cooper an email addressed to brettcooper@live.com stating that he had left a voicemail for Cooper regarding his and his companies' failure to comply with the subpoenas, and that Cooper should contact the staff immediately. (Exhibit E) Cooper did not respond.

13.     On May 4, 2012, I wrote a final letter to Cooper and his companies attaching the April 17 letters, notifying him of the staff's intention to seek to enforce the subpoenas by filing

5

an action is U.S. District Court, and requesting that he contact the staff by May 9, 2012. The letter was given to Capitol Process to serve Cooper at his Moorestown address. (Exhibit F)

14.     On or around May 15, 2012, I spoke to Alisa Kalp of Capitol Process who told me that the server had been out to Cooper's Moorestown address several times and was unable to locate Cooper. The process server noticed that the house appeared to be vacant and that there was a "for sale" sign in the yard.

15.     On May 15, 2012, I identified from a law enforcement data base that Cooper may have moved to 5 Buoy Drive, Mt. Laurel, NJ 08054. I called Ms. Kalp and told her to send the server to that address. Several days later, Ms. Kalp called me and said that the Buoy Drive house also had a "for sale" sign in the yard and appeared to be vacant.

16.     On July 23, 2012, in connection with *SEC v. The Milan Group,* Case No. 11-cv-02132-RMC (D. D.C. Nov. 30, 2011), a case in which Cooper is named as a relief defendant, Cooper's attorneys filed a motion to withdraw and in connection with that motion Cooper filed a declaration listing his address as 1609 Larchmont Place, Mount Laurel, NJ 08054 for purposes of service of documents and pleadings. I wrote a final letter dated July 25, 2012 to Cooper notifying him of the staff's intention to seek to enforce the subpoenas by filing an action in U.S. District Court, and requesting that he contact the staff by August 3, 2012. (Exhibit G) I gave the letter to Capitol Process to serve on Cooper, and he was served with it on July 27, 2012. (Exhibit H).

17.     As of the date of this Declaration, Cooper has not responded to the Commission staff's letters, emails, or telephone calls. Cooper has not requested extensions nor furnished any explanation for his or his companies' failures to produce documents and his failure to appear for testimony.

18.     As of the date of this Declaration, Cooper, Dream Holdings, LLC, Fortitude

Investing, LLC, FII-Ltd, Global Funding Systems, LLC, and Muse of Dreams, LLC, have not

provided documents nor testimony pursuant to the subpoenas duly issued to and properly served

on them by the Commission staff.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 2nd day of January, 2013.


_____

Christopher McLean

# EXHIBIT A



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE: (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

March 27, 2012

**Via UPS**
Brett Cooper
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:   In the Matter of Certain Leased Instruments (HO-11813)

Mr. Cooper:

The staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to give us documents and provide sworn testimony.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. You must comply with the subpoena. You may be subject to a fine and/or imprisonment if you do not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to give us the documents described in the attachment to the subpoena. You must provide these documents by April 11, 2012, or on a date otherwise directed by the staff of the Commission. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you prefer, you may send us photocopies of the originals. The Commission cannot reimburse you for copying costs. The copies must be identical to the originals, including even faint marks or print. If you choose to send copies, you must keep the originals in a safe place. The staff will accept the copies for now, but may require you to produce the originals later.

If you <u>do</u> send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please <u>do not</u> add any identifying notations.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state which paragraph(s) in the subpoena attachment each item responds to.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> materials described in it. If for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and
- the reason you did not produce the item.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved, and the privilege or protection claimed.

*Where should I send the materials?*

Please send the materials to:

>Christopher M. McLean
>United States Securities and Exchange Commission
>Division of Enforcement
>100 F Street, NE
>Washington, DC 20549

## Testifying

*Where and when do I testify?*

The subpoena requires you to come to the Commission's offices at 100 F Street, NE, Washington, DC 20549 on April 25, 2012, at 9:00 a.m., or on a date otherwise directed by the staff of the Commission, to testify under oath in the matter identified on the subpoena.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. Your lawyer may also advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the materials I send and the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (202) 551-4522. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Christopher M. McLean
Staff Attorney

Enclosures:    Subpoena with Attachment
SEC Form 1662



## SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION
#### In the Matter of Certain Leased Instruments, HO-11813

To:   Brett Cooper
229 Carriage Hill Drive
Moorestown, NJ 08057

☑   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission on **April 11, 2012 or as otherwise directed by the staff of the Commission.**

☑   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**100 F Street, NE, Washington, DC 20549 on April 25, 2012 at 9:00 a.m., or as otherwise directed by the staff of the Commission.**

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____     Date:  March 27, 2012

Christopher McLean
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-4547

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:  If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**ATTACHMENT TO SUBPOENA**
March 27, 2012
(Brett Cooper)

**DEFINITIONS**

The following definitions apply to this attachment:

1. Unless otherwise stated, the time period of the documents requested in this attachment is January 1, 2009 to the present.

2. The term "document" means all records, materials and other tangible forms of expression in your possession or custody or under your control, whether originals, copies, annotated copies, drafts or final versions, and however created, produced, stored or maintained, including but not limited to records reflecting communications, charts, lists, logs, spreadsheets, financial information or analyses, books, papers, files, notes, memoranda, reports, schedules, charts, lists, transcriptions, correspondence, telegrams, telexes, wire messages, telephone messages, calendars, diaries, budgets, invoices, audio and video recordings, electronic mail, electronic data compilations, computer disks (or hard copies of the data contained on such disks) and other electronic media, microfilm, microfiche and storage devices.

3. Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

4. Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

5. The disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and each of the functional words "each," "every," "any" and "all" shall be deemed to include each of the other functional words.

6. The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic and includes without limitation: conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as electronic mail, messaging services such as instant messaging, text messages, Twitter messages, and Facebook posts and messages), and telephone lines and wires.

7. A communication or document "concerning," "involving," "relating," "related" or "which relates" to any given subject means any communication or document that

constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

## DOCUMENTS TO BE PRODUCED

Produce the following documents:

1. All documents and communications relating to standby letters of credit, bank guarantees, medium term notes, "platform trading," "high yield trading," trading programs, promissory notes, leased or collateralized or monetized financial instruments, private placement programs, and similar investments including, but not limited to, emails, investment agreements, copies or screenshots of the instruments, lease agreements, escrow agreements, and offering and promotional materials. Such investments include, but are not limited to, investments offered by or through you, Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC, or any other entity that you directly or indirectly control or with which you are or have been associated at any time since January 1, 2009.

2. All documents and communications relating to business, financial, and/or investment transactions, whether completed or not, in which you, or any entity that you directly or indirectly control or with which you are associated, have been in any way involved between December 1, 2011 and the present.

3. All documents relating to the transfer of money in connection with the transactions and investments specified in Items 1 and 2 above, including any wiring instructions, wiring confirmations, checks, deposits, withdrawals, and bank statements.

4. All documents relating to the use of monies associated with the transactions and investments specified in Items 1 and 2 above and where any such monies are currently located, including the location of any assets purchased or investments made with such monies.

5. Documents sufficient to identify (or a list identifying) by account name, account number, and financial institution, all accounts held or controlled by or for you, or in which you have any interest, and all accounts held or controlled by Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC, or any other entity that you directly or indirectly control or with which you are or have been associated at any time since January 1, 2009.

6. All financial records for the accounts identified in response to Item 5 above. Such documents should include, without limitation, all account origination forms, financial statements, bank account statements, brokerage records, and records of all monies received or disbursed.

7. All your tax records and those of Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC, or any other entity that you directly or indirectly control or with which you are or have been associated at any time since January 1, 2009.

8. Documents sufficient to identify (or a list identifying) by name all past and current officers, directors and employees of Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC, or any other entity that you directly or indirectly control or with which you are or have been associated at any time since January 1, 2009, and all addresses, telephone numbers, and email addresses used by such individuals at any time since January 1, 2009.

9. Documents sufficient to identify (or a list of) all telephone numbers and email accounts used by you or on your behalf at any time since January 1, 2009. Such documents (or list) should identify the telephone numbers and email addresses, the periods used by you or on your behalf, and the telephone carrier and email account provider for each telephone number and email address.

10. All your telephone records and those of Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC, or any other entity that you directly or indirectly control or with which you are or have been associated at any time since January 1, 2009.

11. All documents relating to the allegations made and transactions identified in the complaints filed in the following actions:

    a. LNJ Enterprises LLC v. Fortitude Investing, LLC et al., 1:09-cv-00757 (RMB) (D.N.J. Feb. 19, 2009);

    b. Timothy F. Pasch v. Brett Cooper, et al., L-3447-11 (Sup. Ct. N.J., Nov. 8, 2011).

12. All contact lists or address lists used by you or on your behalf at any time since January 1, 2009, including such lists from all your computers and portable hardware devices, such as those contained in email accounts and portable phones or other portable communications devices.

13. All calendars, whether maintained in hard copy or electronically, that were used by or for you at any time since January 1, 2009.

14. Clear and legible copies of all passports, including all pages and the front and back of such passports, used by you at any time since January 1, 2009.

15. Clear and legible copies of all drivers' licenses used by you at any time since January 1, 2009.

16. Produce all emails and all other types of electronic messages, other than those of a purely personal nature, sent or received by you or on your behalf at any time since December 1, 2011.

## Identification and Preservation of Computers and Portable Hardware Devices and Production of Forensic Images

Identify and preserve all computers and portable hardware devices responsive to the following requests. You may be required to produce the computers and portable hardware devices, or forensic images of them, at a later date.

1. Identify all computers and portable hardware devices used by you or on your behalf at any time since January 1, 2009, by make, model, provider name (e.g. carrier), Electronic Serial Number (ESN), Mobile Equipment Identity (MEID), International Mobile Subscriber Identity (IMSI), Integrated Circuit Card Identifier (ICCID), and International Mobile Equipment Identifier (IMEI). Provide a chain of custody identifying the person or persons who currently has/have physical possession of each computer and portable hardware device.

2. Preserve all computers and portable hardware devices used by you or on your behalf at any time since January 1, 2009, including, but not limited to, Subscriber Identity Module (SIM) cards, adapter cards, memory cards, flash cards, and security instruments, such as hardware encryption or password devices, as well as electronic data associated with those devices on other computers, such as native, synchronization, or backup files like Apple iPhone backup files or Research in Motion's BlackBerry Inter@active Pager Backup/Restore (IPD) files.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

SEC 1662 (09-11)

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.*   If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation.  Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding.  Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner.  It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto.  Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings.  That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA.  That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

## E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.*  The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

## F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

## G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

## H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses *Concordance®* 2007 v9.58 and *Concordance Image®* v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below must be discussed with and approved by the legal and technical staff of the Division of Enforcement. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ........................................................................................................................................1

Delivery Formats............................................................................................................................................2

   I.   Concordance® Production............................................................................................................2

       1. Images .........................................................................................................................2

       2. Concordance Image® Cross-Reference File ................................................................2

       3. Data File .......................................................................................................................3

       4. Text ..............................................................................................................................5

       5. Linked Native Files ......................................................................................................6

   II.   Audio Files ..................................................................................................................................6

   III.   Video Files..................................................................................................................................6

   IV.   Electronic Trade and Bank Records ...........................................................................................6

   V.   Electronic Phone Records ...........................................................................................................7

   VI.   Adobe PDF File Production........................................................................................................7

   VII.  Email Native File Production .....................................................................................................7

**General Instructions**
1. A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
   The following information should be included in the letter:
   a. List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
   b. List of custodians, identifying:
      1) The Bates range (and any gaps therein) for each custodian
      2) Total number of records for each custodian
      3) Total number of images for each custodian
      4) Total number of native files for each custodian
   c. List of fields in the order in which they are listed in the data file.
   d. Time zone in which emails were standardized during conversion (email collections only).
2. Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
3. Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
4. Label all media with the following:
   a. Case number
   b. Production date
   c. Bates range

d. Disk number (1 of X), if applicable
5. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6. All productions should be checked and produced free of computer viruses.
7. All produced media should be encrypted.
8. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

**Delivery Formats**

I. *Concordance® Production*

All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:

The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

1. **Images**
   a. Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
   b. File names cannot contain embedded spaces.
   c. Bates numbers should be endorsed on the lower right corner of all images.
   d. The number of TIFF files per folder should not exceed 500 files.
   e. Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
      1) PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
      2) AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
      3) Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

2. *Concordance Image®* **Cross-Reference File**
   The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

   The format is as follows:
   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

   | | |
   |---|---|
   | *ImageID:* | The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.* |
   | *VolumeLabel:* | Optional |
   | *ImageFilePath:* | The full path to the image file. |
   | *DocumentBreak:* | The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document. |
   | *FolderBreak:* | Leave empty |
   | *BoxBreak:* | Leave empty |
   | *PageCount:* | Optional |

   Sample

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

**3. Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

a. The first line of the .DAT file must be a header row identifying the field names.

b. The .DAT file must use the following *Concordance®* default delimiters:

| | | |
|---|---|---|
| Comma | , | ASCII character (020) |
| Quote | þ | ASCII character (254) |
| Newline | ® | ASCII character (174) |

c. Date fields should be provided in the format: mm/dd/yyyy

d. All attachments should sequentially follow the parent document/email.

e. All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

f. The .DAT file for scanned paper collections must contain, at a minimum, the following fields:

1) FIRSTBATES:   Beginning Bates number
2) LASTBATES:    Ending Bates number
3) IMAGEID:      Image Key field
4) CUSTODIAN:    Individual from whom the document originated
5) OCRTEXT:      Optical Character Recognition text

Sample

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþ
þþPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþ
þþPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþ
þþPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþ
```

Sample of .DAT file:

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþþOCRTEXTþ
þþPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþþ*** IMG0000001 ***®®The world of investing is
fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed
by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why
investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities
markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that govern the
securities industry in the United States derive from a simple and straightforward concept: all investors, whether
large institutions or private individuals, should have access to certain basic facts about an investment prior to
buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful
financial and other information to the public. This provides a common pool of knowledge for all investors to use
to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely,
comprehensive, and accurate information can people make sound investment decisions.þ
þþPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþþ***IMG0000003 ***®®The result of this
information flow is a far more active, efficient, and transparent capital market that facilitates the capital formation
so important to our nation's economy.þ
þþPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþþ *** IMG0000004 ***®®To insure that this
objective is always being met, the SEC continually works with all major market participants, including especially
the investors in our securities markets, to listen to their concerns and to learn from their experience.®® ***
IMG0000005 ***®®The SEC oversees the key participants in the securities world, including securities
exchanges, securities brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and
protecting against fraud.þ
```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

U.S. Securities and Exchange Commission
Data Delivery Standards

| | | |
|---|---|---|
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4. **Text**

Searchable text of the entire document must be provided for every record, at the document level.

   a. Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. \*\*\* IMG0000001 \*\*\* whenever possible. The data surrounded by asterisks is the *Concordance*® ImageID .

Sample page markers with OCR text:

> \*\*\* IMG0000001 \*\*\*
>
> The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
>
> \*\*\* IMG0000002 \*\*\*
>
> The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

c. For redacted documents, provide the full text for the redacted version.

d. Delivery
The text can be delivered two ways:
1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
2) Included in the .DAT file.

5. **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
a. Native file documents must be named per the FIRSTBATES number.
b. The full path of the native file must be provided in the .DAT file for the LINK field.
c. The number of native files per folder should not exceed 500 files.

II. **Audio Files**
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | CALLER_NAME or CALLER_ID: | Caller's name or identification number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | DATE: | Date of call |
| 4) | TIME: | Time of call |
| 5) | CALLED_PARTY: | Name of the party called |
| 6) | CALLED_NUMBER: | Called party's phone number |
| 7) | FILENAME: | Filename of audio file |

III. **Video Files**
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

IV. **Electronic Trade and Bank Records**
When producing electronic trade and bank records, provide the files in one of the following formats:

U.S. Securities and Exchange Commission
Data Delivery Standards

1. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.
2. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**V. Electronic Phone Records**
1. Delimited text file with header information detailing the field structure.
2. Comma Separated Value file (.csv) with header information detailing the field structure.
3. MS Excel spreadsheet with header information detailing the field structure.
The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | ACCT_NUMBER: | Caller's telephone account number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | CALLED_NUMBER: | Called party's phone number |
| 4) | DATE: | Date of call |
| 5) | START_TIME: | Start time of call |
| 6) | END_TIME: | End time of call |
| 7) | DURATION: | Duration in minutes of the call |

**VI. Adobe PDF File Production**
When approved, Adobe PDF files may be produced in native file format.
1. PDF files should be produced in separate folders named by the Custodian.
2. All PDFs must be unitized at the document level, i.e. each PDF should represent a discrete document; a single PDF cannot contain multiple documents.
3. All PDF files must contain embedded text that includes all discernable words within the document, not selected text only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**VII. Email Native File Production**
When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.



DIVISION OF
ENFORCEMENT

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE: (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

March 27, 2012

<u>**Via UPS**</u>
Custodian of Records
Dream Holdings, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:   <u>In the Matter of Certain Leased Instruments (HO-11813)</u>

Mr. Cooper:

Pursuant to a formal order of investigation entered by the Commission in the above referenced matter, the staff of the Division of Enforcement has issued the enclosed subpoena, which requires Dream Holdings, LLC to produce certain documents to officers of the Commission. The documents required by the subpoena should be sent to:

Christopher M. McLean
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

Documents produced pursuant to the subpoena should be accompanied by a list briefly identifying each document (or group of documents) and the paragraph(s) of the subpoena attachment to which each document (or group of documents) relates. In addition, documents should be produced so that one document is clearly and separately identifiable from another document, whether by staples, paper clips, slip sheets or in another manner that distinguishes one document from another. Please mark each document in an appropriate place indicating that the document was produced by you and serially number the pages of all the documents submitted. Please also indicate whether a diligent search has been made for the subpoenaed material and whether you have produced all of the items called for by the subpoena. If you produce copies, please ensure that each copy is an exact duplicate of the original (e.g., including any facsimile lines), and all originals <u>must</u> be retained so they will be available if and when the staff notifies you that such originals are necessary.

Please note that while documents should be produced to us in a manner that indicates the items of the subpoena to which a document is responsive, it is also imperative that we be able to identify the source of each document produced (i.e., the name of the person(s) who have or had

possession, custody, and control over, and the location of, each document). In addition, we require responsive documents that are in electronic form to be produced in an electronic format consistent with the Commission's Data Delivery Standards, which are attached. We also request that responsive documents which are in hard copy be produced in electronic form if at all possible.

If any of the documents called for by the subpoena are not produced, for any reason, please submit a list stating for each such document not produced: (a) the creator(s) of the document; (b) the date of the document; (c) the present, or last known, custodian of the document; (d) the subject matter of the document; (e) all persons known to have been furnished the document or a photocopy of the document and all persons known to have been informed of the document's substance; and (f) the reason the document is not being produced. In addition, if any document is withheld on the basis of a claim of attorney-client privilege, also identify the attorney and client involved.

Please review the enclosed SEC Form 1662, because it includes important supplemental information and a List of Routine Uses that apply to the production of documents pursuant to subpoenas. In addition, please complete the attached Declaration Certifying Records.

This investigation should not be construed as an indication by the Commission or its staff that any violations of law have occurred, nor should it be considered a reflection upon any person, entity, or security.

Finally, please note that in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

If you have any other questions, you may call me at (202) 551-4522. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Christopher M. McLean
Staff Attorney

Enclosures:    Subpoena with Attachment
Declaration Certifying Records
SEC Form 1662
SEC Data Delivery Standards



## SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION
**In the Matter of Certain Leased Instruments, HO-11813**

To:    Dream Holdings, LLC
       c/o Custodian of Records
       229 Carriage Hill Drive
       Moorestown, NJ 08057

☑    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission on **April 11, 2012 or as otherwise directed by the staff of the Commission.**

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:    _____          Date:   March 27, 2012

Christopher McLean
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-4547

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## ATTACHMENT TO SUBPOENA
March 27, 2012
(Dream Holdings, LLC)

## DEFINITIONS

The following definitions apply to this attachment:

1. Unless otherwise stated, the time period of the documents requested in this attachment is <u>January 1, 2009 to the present.</u>

2. The term "document" means all records, materials and other tangible forms of expression <u>in your possession or custody or under your control,</u> whether originals, copies, annotated copies, drafts or final versions, and however created, produced, stored or maintained, including but not limited to records reflecting communications, charts, lists, logs, spreadsheets, financial information or analyses, books, papers, files, notes, memoranda, reports, schedules, charts, lists, transcriptions, correspondence, telegrams, telexes, wire messages, telephone messages, calendars, diaries, budgets, invoices, audio and video recordings, electronic mail, electronic data compilations, computer disks (or hard copies of the data contained on such disks) and other electronic media, microfilm, microfiche and storage devices.

3. Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

4. Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

5. The disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and each of the functional words "each," "every," "any" and "all" shall be deemed to include each of the other functional words.

6. The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic and includes without limitation:  conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as electronic mail, messaging services such as instant messaging, text messages, Twitter messages, and Facebook posts and messages), and telephone lines and wires.

7. A communication or document "concerning," "involving," "relating," "related" or "which relates" to any given subject means any communication or document that

constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

## DOCUMENTS TO BE PRODUCED

Produce the following documents:

1. All documents and communications relating to standby letters of credit, bank guarantees, medium term notes, "platform trading," "high yield trading," trading programs, promissory notes, leased or collateralized or monetized financial instruments, private placement programs, and similar investments including, but not limited to, emails, investment agreements, copies or screenshots of the instruments, lease agreements, escrow agreements, and offering and promotional materials. Such investments include, but are not limited to, investments offered by or through Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC at any time since January 1, 2009.

2. All documents and communications relating to business, financial, and/or investment transactions, whether completed or not, in which Dream Holdings, LLC has been in any way involved between December 1, 2011 and the present.

3. All documents relating to the transfer of money in connection with the transactions and investments specified in Items 1 and 2 above, including any wiring instructions, wiring confirmations, checks, deposits, withdrawals, and bank statements.

4. All documents relating to the use of monies associated with the transactions and investments specified in Items 1 and 2 above and where any such monies are currently located, including the location of any assets purchased or investments made with such monies.

5. Documents sufficient to identify (or a list identifying) by account name, account number, and financial institution, all accounts held or controlled by or for Dream Holdings, LLC or in which Dream Holdings, LLC has or had any interest at any time since January 1, 2009.

6. All financial records for the accounts identified in response to Item 5 above. Such documents should include, without limitation, all account origination forms, financial statements, bank account statements, brokerage records, and records of all monies received or disbursed.

7. All tax records of Dream Holdings, LLC.

8. Documents sufficient to identify (or a list identifying) by name all past and current officers, directors and employees of Dream Holdings, LLC, and all addresses, telephone numbers, and email addresses used by such individuals at any time since January 1, 2009.

9. Documents sufficient to identify (or a list of) all telephone numbers and email accounts used by Dream Holdings, LLC at any time since January 1, 2009. Such documents (or list) should identify the telephone numbers and email addresses, the periods in which those telephone numbers and email addresses were used, and the telephone carrier and email account provider for each telephone number and email address.

10. All telephone records of Dream Holdings, LLC.

11. All documents relating to the allegations made and transactions identified in the complaints filed in the following actions:

    a.  <u>LNJ Enterprises LLC v. Fortitude Investing, LLC et al.</u>, 1:09-cv-00757 (RMB) (D.N.J. Feb. 19, 2009);

    b.  <u>Timothy F. Pasch v. Brett Cooper, et al.</u>, L-3447-11 (Sup. Ct. N.J., Nov. 8, 2011).

12. All contact lists or address lists used by Dream Holdings, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009, including such lists from all computers and portable hardware devices, such as those contained in email accounts and portable phones or other portable communications devices.

13. All calendars, whether maintained in hard copy or electronically, that were used by or for Dream Holdings, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009.

14. Produce all emails and all other types of electronic messages, other than those of a purely personal nature, sent or received by or on behalf of Dream Holdings, LLC and/or its past and current officers, directors and employees, at any time since December 1, 2011.

**<u>Identification and Preservation of Computers and Portable Hardware Devices and Production of Forensic Images</u>**

Identify and preserve all computers and portable hardware devices responsive to the following requests. Dream Holdings, LLC may be required to produce the computers and portable hardware devices, or forensic images of them, at a later date.

1. Identify all computers and portable hardware devices used by Dream Holdings, LLC and its past and current officers, directors and employees at any time since January 1, 2009, by make, model, provider name (e.g. carrier), Electronic Serial Number (ESN), Mobile Equipment Identity (MEID), International Mobile Subscriber Identity (IMSI), Integrated Circuit Card Identifier (ICCID), and International Mobile Equipment Identifier (IMEI). Provide a chain of custody identifying the person or persons who currently has/have physical possession of each computer and portable hardware device.

2. Preserve all computers and portable hardware devices used by Dream Holdings, LLC and/or its past and current officers, directors and employees at any time since January 1,

2009, including, but not limited to, Subscriber Identity Module (SIM) cards, adapter cards, memory cards, flash cards, and security instruments, such as hardware encryption or password devices, as well as electronic data associated with those devices on other computers, such as native, synchronization, or backup files like Apple iPhone backup files or Research in Motion's BlackBerry Inter@active Pager Backup/Restore (IPD) files.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.    *Formal Order Availability.*  If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation.  Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding.  Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate.  In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner.  It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto.  Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings.  That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA.  That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received.  Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received.  If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

## E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.*  The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

4

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460.  If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR.  The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses *Concordance®* 2007 v9.58 and *Concordance Image®* v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below must be discussed with and approved by the legal and technical staff of the Division of Enforcement. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ..........................................................................................................................................................1

Delivery Formats..............................................................................................................................................................2

   I.  Concordance® Production...........................................................................................................................................2

      1.  Images ............................................................................................................................................................2

      2.  Concordance Image® Cross-Reference File ................................................................................................2

      3.  Data File .........................................................................................................................................................3

      4.  Text ................................................................................................................................................................5

      5.  Linked Native Files ......................................................................................................................................6

   II.  Audio Files ...............................................................................................................................................................6

   III.  Video Files................................................................................................................................................................6

   IV.  Electronic Trade and Bank Records .........................................................................................................................6

   V.  Electronic Phone Records .........................................................................................................................................7

   VI.  Adobe PDF File Production......................................................................................................................................7

   VII.  Email Native File Production ...................................................................................................................................7

**General Instructions**

   1.  A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
      The following information should be included in the letter:
      a.  List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
      b.  List of custodians, identifying:
         1)  The Bates range (and any gaps therein) for each custodian
         2)  Total number of records for each custodian
         3)  Total number of images for each custodian
         4)  Total number of native files for each custodian
      c.  List of fields in the order in which they are listed in the data file.
      d.  Time zone in which emails were standardized during conversion (email collections only).
   2.  Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
   *3.*  Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
   4  Label all media with the following·
      a.  Case number
      b.  Production date
      c.  Bates range

    d. Disk number (1 of X), if applicable
5. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6. All productions should be checked and produced free of computer viruses.
7. All produced media should be encrypted.
8. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

## Delivery Formats

### I. *Concordance®* Production
All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:
The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

1. **Images**
   a. Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
   b. File names cannot contain embedded spaces.
   c. Bates numbers should be endorsed on the lower right corner of all images.
   d. The number of TIFF files per folder should not exceed 500 files.
   e. Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
      1) PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
      2) AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
      3) Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

2. ***Concordance Image®* Cross-Reference File**
   The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

   The format is as follows:
   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

   *ImageID*:    The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.*

   *VolumeLabel*:    Optional
   *ImageFilePath*:    The full path to the image file.
   *DocumentBreak*:    The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document.
   *FolderBreak*:    Leave empty
   *BoxBreak*:    Leave empty
   *PageCount*:    Optional

   Sample

```
IMG0000001, ,E:\001\IMG0000001.TIF,Y,,,
IMG0000002, ,E:\001\IMG0000002.TIF,,,,
IMG0000003, ,E:\001\IMG0000003.TIF,,,,
IMG0000004, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000005, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000006, ,E:\001\IMG0000003.TIF,,,,
```

**3.  Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

a.  The first line of the .DAT file must be a header row identifying the field names.
b.  The .DAT file must use the following *Concordance®* default delimiters:

| Comma | , | ASCII character (020) |
|---|---|---|
| Quote | þ | ASCII character (254) |
| Newline | ® | ASCII character (174) |

c.  Date fields should be provided in the format:  mm/dd/yyyy
d.  All attachments should sequentially follow the parent document/email.
e.  All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

f.  The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
1)  FIRSTBATES:  Beginning Bates number
2)  LASTBATES:  Ending Bates number
3)  IMAGEID:  Image Key field
4)  CUSTODIAN:  Individual from whom the document originated
5)  OCRTEXT:  Optical Character Recognition text

Sample

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþ
þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþ
þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþ
þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþ
```

Sample of .DAT file:

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþþOCRTEXTþ
þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþþ*** IMG0000001 ***®®The world of investing is
fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed
by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why
investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities
markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that govern the
securities industry in the United States derive from a simple and straightforward concept: all investors, whether
large institutions or private individuals, should have access to certain basic facts about an investment prior to
buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful
financial and other information to the public. This provides a common pool of knowledge for all investors to use
to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely,
comprehensive, and accurate information can people make sound investment decisions.þ
þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþþ***IMG0000003 ***®®The result of this
information flow is a far more active, efficient, and transparent capital market that facilitates the capital formation
so important to our nation's economy.þ
þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþþ *** IMG0000004 ***®®To insure that this
objective is always being met, the SEC continually works with all major market participants, including especially
the investors in our securities markets, to listen to their concerns and to learn from their experience.®® ***
IMG0000005 ***®®The SEC oversees the key participants in the securities world, including securities
exchanges, securities brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and
protecting against fraud.þ
```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4.  **Text**
    Searchable text of the entire document must be provided for every record, at the document level.

    a.  **Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.**

b.  OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. \*\*\* IMG0000001 \*\*\* whenever possible. The data surrounded by asterisks is the *Concordance®* ImageID .

Sample page markers with OCR text:

***

\*\*\* IMG0000001 \*\*\*

The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.

\*\*\* IMG0000002 \*\*\*

The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

***

c.  For redacted documents, provide the full text for the redacted version.

d.  Delivery
The text can be delivered two ways:
1)  As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
2)  Included in the .DAT file.

5.  **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
a.  Native file documents must be named per the FIRSTBATES number.
b.  The full path of the native file must be provided in the .DAT file for the LINK field.
c.  The number of native files per folder should not exceed 500 files.

## II.  Audio Files
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | CALLER_NAME or CALLER_ID: | Caller's name or identification number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | DATE: | Date of call |
| 4) | TIME: | Time of call |
| 5) | CALLED_PARTY: | Name of the party called |
| 6) | CALLED_NUMBER: | Called party's phone number |
| 7) | FILENAME: | Filename of audio file |

## III.  Video Files
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## IV.  Electronic Trade and Bank Records
When producing electronic trade and bank records, provide the files in one of the following formats:

1.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**V.   Electronic Phone Records**

1.  Delimited text file with header information detailing the field structure.
2.  Comma Separated Value file (.csv) with header information detailing the field structure.
3.  MS Excel spreadsheet with header information detailing the field structure.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | ACCT_NUMBER: | Caller's telephone account number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | CALLED_NUMBER: | Called party's phone number |
| 4) | DATE: | Date of call |
| 5) | START_TIME: | Start time of call |
| 6) | END_TIME: | End time of call |
| 7) | DURATION: | Duration in minutes of the call |

**VI.   Adobe PDF File Production**

When approved, Adobe PDF files may be produced in native file format.

1.  PDF files should be produced in separate folders named by the Custodian.
2.  All PDFs must be unitized at the document level, i.e. each PDF should represent a discrete document; a single PDF cannot contain multiple documents.
3.  All PDF files must contain embedded text that includes all discernable words within the document, not selected text only.  This requires all layers of the PDF to be flattened first.
4.  If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**VII.   Email Native File Production**

When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.



**DIVISION OF ENFORCEMENT**

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE:   (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

March 27, 2012

**Via UPS**
Custodian of Records
FII-Ltd
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:    <u>In the Matter of Certain Leased Instruments (HO-11813)</u>

Mr. Cooper:

Pursuant to a formal order of investigation entered by the Commission in the above referenced matter, the staff of the Division of Enforcement has issued the enclosed subpoena, which requires FII-Ltd to produce certain documents to officers of the Commission. The documents required by the subpoena should be sent to:

> Christopher M. McLean
> United States Securities and Exchange Commission
> 100 F Street, NE
> Washington, DC 20549

Documents produced pursuant to the subpoena should be accompanied by a list briefly identifying each document (or group of documents) and the paragraph(s) of the subpoena attachment to which each document (or group of documents) relates. In addition, documents should be produced so that one document is clearly and separately identifiable from another document, whether by staples, paper clips, slip sheets or in another manner that distinguishes one document from another. Please mark each document in an appropriate place indicating that the document was produced by you and serially number the pages of all the documents submitted. Please also indicate whether a diligent search has been made for the subpoenaed material and whether you have produced all of the items called for by the subpoena. If you produce copies, please ensure that each copy is an exact duplicate of the original (e.g., including any facsimile lines), and all originals <u>must</u> be retained so they will be available if and when the staff notifies you that such originals are necessary.

Please note that while documents should be produced to us in a manner that indicates the items of the subpoena to which a document is responsive, it is also imperative that we be able to identify the source of each document produced (i.e., the name of the person(s) who have or had

possession, custody, and control over, and the location of, each document).  In addition, we require responsive documents that are in electronic form to be produced in an electronic format consistent with the Commission's Data Delivery Standards, which are attached.  We also request that responsive documents which are in hard copy be produced in electronic form if at all possible.

If any of the documents called for by the subpoena are not produced, for any reason, please submit a list stating for each such document not produced: (a) the creator(s) of the document; (b) the date of the document; (c) the present, or last known, custodian of the document; (d) the subject matter of the document; (e) all persons known to have been furnished the document or a photocopy of the document and all persons known to have been informed of the document's substance; and (f) the reason the document is not being produced.  In addition, if any document is withheld on the basis of a claim of attorney-client privilege, also identify the attorney and client involved.

Please review the enclosed SEC Form 1662, because it includes important supplemental information and a List of Routine Uses that apply to the production of documents pursuant to subpoenas.  In addition, please complete the attached Declaration Certifying Records.

This investigation should not be construed as an indication by the Commission or its staff that any violations of law have occurred, nor should it be considered a reflection upon any person, entity, or security.

Finally, please note that in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

If you have any other questions, you may call me at (202) 551-4522.  If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Christopher M. McLean
Staff Attorney

Enclosures:    Subpoena with Attachment
               Declaration Certifying Records
               SEC Form 1662
               SEC Data Delivery Standards



### SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION
### In the Matter of Certain Leased Instruments, HO-11813

To:     FII-Ltd
        c/o Custodian of Records
        229 Carriage Hill Drive
        Moorestown, NJ 08057

☑     **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission on **April 11, 2012 or as otherwise directed by the staff of the Commission**.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____          Date:   March 27, 2012
    Christopher McLean
    United States Securities and Exchange Commission
    100 F Street, NE
    Washington, DC 20549
    (202) 551-4547

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## ATTACHMENT TO SUBPOENA
March 27, 2012
(FII-Ltd)

## DEFINITIONS

The following definitions apply to this attachment:

1. Unless otherwise stated, the time period of the documents requested in this attachment is <u>January 1, 2009 to the present.</u>

2. The term "document" means all records, materials and other tangible forms of expression <u>in your possession or custody or under your control</u>, whether originals, copies, annotated copies, drafts or final versions, and however created, produced, stored or maintained, including but not limited to records reflecting communications, charts, lists, logs, spreadsheets, financial information or analyses, books, papers, files, notes, memoranda, reports, schedules, charts, lists, transcriptions, correspondence, telegrams, telexes, wire messages, telephone messages, calendars, diaries, budgets, invoices, audio and video recordings, electronic mail, electronic data compilations, computer disks (or hard copies of the data contained on such disks) and other electronic media, microfilm, microfiche and storage devices.

3. Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

4. Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

5. The disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and each of the functional words "each," "every," "any" and "all" shall be deemed to include each of the other functional words.

6. The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic and includes without limitation: conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as electronic mail, messaging services such as instant messaging, text messages, Twitter messages, and Facebook posts and messages), and telephone lines and wires.

7. A communication or document "concerning," "involving," "relating," "related" or "which relates" to any given subject means any communication or document that

constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

## DOCUMENTS TO BE PRODUCED

Produce the following documents:

1. All documents and communications relating to standby letters of credit, bank guarantees, medium term notes, "platform trading," "high yield trading," trading programs, promissory notes, leased or collateralized or monetized financial instruments, private placement programs, and similar investments including, but not limited to, emails, investment agreements, copies or screenshots of the instruments, lease agreements, escrow agreements, and offering and promotional materials. Such investments include, but are not limited to, investments offered by or through Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC at any time since January 1, 2009.

2. All documents and communications relating to business, financial, and/or investment transactions, whether completed or not, in which FII-Ltd has been in any way involved between December 1, 2011 and the present.

3. All documents relating to the transfer of money in connection with the transactions and investments specified in Items 1 and 2 above, including any wiring instructions, wiring confirmations, checks, deposits, withdrawals, and bank statements.

4. All documents relating to the use of monies associated with the transactions and investments specified in Items 1 and 2 above and where any such monies are currently located, including the location of any assets purchased or investments made with such monies.

5. Documents sufficient to identify (or a list identifying) by account name, account number, and financial institution, all accounts held or controlled by or for FII-Ltd or in which FII-Ltd has or had any interest at any time since January 1, 2009.

6. All financial records for the accounts identified in response to Item 5 above. Such documents should include, without limitation, all account origination forms, financial statements, bank account statements, brokerage records, and records of all monies received or disbursed.

7. All tax records of FII-Ltd.

8. Documents sufficient to identify (or a list identifying) by name all past and current officers, directors and employees of FII-Ltd, and all addresses, telephone numbers, and email addresses used by such individuals at any time since January 1, 2009.

9. Documents sufficient to identify (or a list of) all telephone numbers and email accounts used by FII-Ltd at any time since January 1, 2009. Such documents (or list) should identify the telephone numbers and email addresses, the periods in which those telephone numbers and email addresses were used, and the telephone carrier and email account provider for each telephone number and email address.

10. All telephone records of FII-Ltd.

11. All documents relating to the allegations made and transactions identified in the complaints filed in the following actions:

    a.  LNJ Enterprises LLC v. Fortitude Investing, LLC et al., 1:09-cv-00757 (RMB) (D.N.J. Feb. 19, 2009);

    b.  Timothy F. Pasch v. Brett Cooper, et al., L-3447-11 (Sup. Ct. N.J., Nov. 8, 2011).

12. All contact lists or address lists used by FII-Ltd and/or its past and current officers, directors and employees at any time since January 1, 2009, including such lists from all computers and portable hardware devices, such as those contained in email accounts and portable phones or other portable communications devices.

13. All calendars, whether maintained in hard copy or electronically, that were used by or for FII-Ltd and/or its past and current officers, directors and employees at any time since January 1, 2009.

14. Produce all emails and all other types of electronic messages, other than those of a purely personal nature, sent or received by or on behalf of FII-Ltd and/or its past and current officers, directors and employees, at any time since December 1, 2011.

**Identification and Preservation of Computers and Portable Hardware Devices and Production of Forensic Images**

Identify and preserve all computers and portable hardware devices responsive to the following requests. FII-Ltd may be required to produce the computers and portable hardware devices, or forensic images of them, at a later date.

1. Identify all computers and portable hardware devices used by FII-Ltd and its past and current officers, directors and employees at any time since January 1, 2009, by make, model, provider name (e.g. carrier), Electronic Serial Number (ESN), Mobile Equipment Identity (MEID), International Mobile Subscriber Identity (IMSI), Integrated Circuit Card Identifier (ICCID), and International Mobile Equipment Identifier (IMEI). Provide a chain of custody identifying the person or persons who currently has/have physical possession of each computer and portable hardware device.

2. Preserve all computers and portable hardware devices used by FII-Ltd and/or its past and current officers, directors and employees at any time since January 1, 2009,

including, but not limited to, Subscriber Identity Module (SIM) cards, adapter cards, memory cards, flash cards, and security instruments, such as hardware encryption or password devices, as well as electronic data associated with those devices on other computers, such as native, synchronization, or backup files like Apple iPhone backup files or Research in Motion's BlackBerry Inter@active Pager Backup/Restore (IPD) files.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1.  *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

    If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

    You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

    > A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

    If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

    > Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5.  *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

### C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

### D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

## F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

## G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

## H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

3

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460.  If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR.  The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



## U.S. Securities and Exchange Commission

## Data Delivery Standards

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses *Concordance®* 2007 v9.58 and *Concordance Image®* v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below must be discussed with and approved by the legal and technical staff of the Division of Enforcement. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions .................................................................................................................................................1

Delivery Formats.....................................................................................................................................................2

    I.  Concordance® Production.............................................................................................................................2

        1. Images .............................................................................................................................................2

        2. Concordance Image® Cross-Reference File .................................................................................2

        3. Data File .........................................................................................................................................3

        4. Text ................................................................................................................................................5

        5. Linked Native Files ........................................................................................................................6

    II.  Audio Files ...................................................................................................................................................6

    III.  Video Files....................................................................................................................................................6

    IV.  Electronic Trade and Bank Records ............................................................................................................6

    V.  Electronic Phone Records............................................................................................................................7

    VI.  Adobe PDF File Production.........................................................................................................................7

    VII. Email Native File Production .......................................................................................................................7

### General Instructions

1. A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
   The following information should be included in the letter:
   a. List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
   b. List of custodians, identifying:
      1) The Bates range (and any gaps therein) for each custodian
      2) Total number of records for each custodian
      3) Total number of images for each custodian
      4) Total number of native files for each custodian
   c. List of fields in the order in which they are listed in the data file.
   d. Time zone in which emails were standardized during conversion (email collections only).
2. Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
3. Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
4. Label all media with the following:
   a. Case number
   b. Production date
   c. Bates range

    d.   Disk number (1 of X), if applicable
5.   Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6.   All productions should be checked and produced free of computer viruses.
7.   All produced media should be encrypted.
8.   Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

**Delivery Formats**

I.   *Concordance®* **Production**
    All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

    Bates numbering documents:
    The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

    The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

  1.  **Images**
    a.   Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
    b.   File names cannot contain embedded spaces.
    c.   Bates numbers should be endorsed on the lower right corner of all images.
    d.   The number of TIFF files per folder should not exceed 500 files.
    e.   Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
       1)  PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
       2)  AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
       3)  Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

  2.  *Concordance Image®* **Cross-Reference File**
    The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

    The format is as follows:
    *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

    *ImageID:*       The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.*

    *VolumeLabel:*   Optional
    *ImageFilePath:*  The full path to the image file.
    *DocumentBreak:* The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document.
    *FolderBreak:*    Leave empty
    *BoxBreak:*      Leave empty
    *PageCount:*     Optional

    Sample

```
IMG0000001, ,E:\001\IMG0000001.TIF,Y,,,
IMG0000002, ,E:\001\IMG0000002.TIF,,,,
IMG0000003, ,E:\001\IMG0000003.TIF,,,,
IMG0000004, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000005, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000006, ,E:\001\IMG0000003.TIF,,,,
```

3.  **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

a.  The first line of the .DAT file must be a header row identifying the field names.
b.  The .DAT file must use the following *Concordance®* default delimiters:

| Comma | , | ASCII character (020) |
|---|---|---|
| Quote | þ | ASCII character (254) |
| Newline | ® | ASCII character (174) |

c.  Date fields should be provided in the format: mm/dd/yyyy
d.  All attachments should sequentially follow the parent document/email.
e.  All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

f.  The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
1) FIRSTBATES:   Beginning Bates number
2) LASTBATES:   Ending Bates number
3) IMAGEID:   Image Key field
4) CUSTODIAN:   Individual from whom the document originated
5) OCRTEXT:   Optical Character Recognition text

Sample

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþ
þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþ
þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþ
þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþ
```

Sample of .DAT file:

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþþOCRTEXTþ
þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþþ*** IMG0000001 ***®®The world of investing is
fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed
by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why
investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities
markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that govern the
securities industry in the United States derive from a simple and straightforward concept: all investors, whether
large institutions or private individuals, should have access to certain basic facts about an investment prior to
buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful
financial and other information to the public. This provides a common pool of knowledge for all investors to use
to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely,
comprehensive, and accurate information can people make sound investment decisions.þ
þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþþ***IMG0000003 ***®®The result of this
information flow is a far more active, efficient, and transparent capital market that facilitates the capital formation
so important to our nation's economy.þ
þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþþ *** IMG0000004 ***®®To insure that this
objective is always being met, the SEC continually works with all major market participants, including especially
the investors in our securities markets, to listen to their concerns and to learn from their experience.®® ***
IMG0000005 ***®®The SEC oversees the key participants in the securities world, including securities
exchanges, securities brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and
protecting against fraud.þ
```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

| | | |
|---|---|---|
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4. **Text**

Searchable text of the entire document must be provided for every record, at the document level.

   a. Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance®* ImageID .

Sample page markers with OCR text:

> *** IMG0000001 ***
>
> The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
>
> *** IMG0000002 ***
>
> The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

c. For redacted documents, provide the full text for the redacted version.

d. Delivery
   The text can be delivered two ways:
   1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
   2) Included in the .DAT file.

5. **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number.
   b. The full path of the native file must be provided in the .DAT file for the LINK field.
   c. The number of native files per folder should not exceed 500 files.

II. **Audio Files**
   Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

   | | | |
   |---|---|---|
   | 1) | CALLER_NAME or CALLER_ID: | Caller's name or identification number |
   | 2) | CALLING_NUMBER: | Caller's phone number |
   | 3) | DATE: | Date of call |
   | 4) | TIME: | Time of call |
   | 5) | CALLED_PARTY: | Name of the party called |
   | 6) | CALLED_NUMBER: | Called party's phone number |
   | 7) | FILENAME: | Filename of audio file |

III. **Video Files**
   Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

IV. **Electronic Trade and Bank Records**
   When producing electronic trade and bank records, provide the files in one of the following formats:

1. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**V. Electronic Phone Records**
1. Delimited text file with header information detailing the field structure.
2. Comma Separated Value file (.csv) with header information detailing the field structure.
3. MS Excel spreadsheet with header information detailing the field structure.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | ACCT_NUMBER: | Caller's telephone account number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | CALLED_NUMBER: | Called party's phone number |
| 4) | DATE: | Date of call |
| 5) | START_TIME: | Start time of call |
| 6) | END_TIME: | End time of call |
| 7) | DURATION: | Duration in minutes of the call |

**VI. Adobe PDF File Production**
When approved, Adobe PDF files may be produced in native file format.
1. PDF files should be produced in separate folders named by the Custodian.
2. All PDFs must be unitized at the document level, i.e. each PDF should represent a discrete document; a single PDF cannot contain multiple documents.
3. All PDF files must contain embedded text that includes all discernable words within the document, not selected text only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**VII. Email Native File Production**
When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE:  (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

March 27, 2012

**Via UPS**
Custodian of Records
Fortitude Investing, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:    In the Matter of Certain Leased Instruments (HO-11813)

Mr. Cooper:

Pursuant to a formal order of investigation entered by the Commission in the above referenced matter, the staff of the Division of Enforcement has issued the enclosed subpoena, which requires Fortitude Investing, LLC to produce certain documents to officers of the Commission. The documents required by the subpoena should be sent to:

Christopher M. McLean
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

Documents produced pursuant to the subpoena should be accompanied by a list briefly identifying each document (or group of documents) and the paragraph(s) of the subpoena attachment to which each document (or group of documents) relates. In addition, documents should be produced so that one document is clearly and separately identifiable from another document, whether by staples, paper clips, slip sheets or in another manner that distinguishes one document from another. Please mark each document in an appropriate place indicating that the document was produced by you and serially number the pages of all the documents submitted. Please also indicate whether a diligent search has been made for the subpoenaed material and whether you have produced all of the items called for by the subpoena. If you produce copies, please ensure that each copy is an exact duplicate of the original (e.g., including any facsimile lines), and all originals <u>must</u> be retained so they will be available if and when the staff notifies you that such originals are necessary.

Please note that while documents should be produced to us in a manner that indicates the items of the subpoena to which a document is responsive, it is also imperative that we be able to identify the source of each document produced (i.e., the name of the person(s) who have or had

possession, custody, and control over, and the location of, each document). In addition, we require responsive documents that are in electronic form to be produced in an electronic format consistent with the Commission's Data Delivery Standards, which are attached. We also request that responsive documents which are in hard copy be produced in electronic form if at all possible.

If any of the documents called for by the subpoena are not produced, for any reason, please submit a list stating for each such document not produced: (a) the creator(s) of the document; (b) the date of the document; (c) the present, or last known, custodian of the document; (d) the subject matter of the document; (e) all persons known to have been furnished the document or a photocopy of the document and all persons known to have been informed of the document's substance; and (f) the reason the document is not being produced. In addition, if any document is withheld on the basis of a claim of attorney-client privilege, also identify the attorney and client involved.

Please review the enclosed SEC Form 1662, because it includes important supplemental information and a List of Routine Uses that apply to the production of documents pursuant to subpoenas. In addition, please complete the attached Declaration Certifying Records.

This investigation should not be construed as an indication by the Commission or its staff that any violations of law have occurred, nor should it be considered a reflection upon any person, entity, or security.

Finally, please note that in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

If you have any other questions, you may call me at (202) 551-4522. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Christopher M. McLean
Staff Attorney


Enclosures:    Subpoena with Attachment
               Declaration Certifying Records
               SEC Form 1662
               SEC Data Delivery Standards



## SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION
### <u>In the Matter of Certain Leased Instruments, HO-11813</u>

To:    Fortitude Investing, LLC
       c/o Custodian of Records
       229 Carriage Hill Drive
       Moorestown, NJ 08057

☑    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission on **April 11, 2012 or as otherwise directed by the staff of the Commission.**

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____       Date:   March 27, 2012
Christopher McLean
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-4547

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## ATTACHMENT TO SUBPOENA
March 27, 2012
(Fortitude Investing, LLC)

## DEFINITIONS

The following definitions apply to this attachment:

1. Unless otherwise stated, the time period of the documents requested in this attachment is <u>January 1, 2009 to the present.</u>

2. The term "document" means all records, materials and other tangible forms of expression <u>in your possession or custody or under your control</u>, whether originals, copies, annotated copies, drafts or final versions, and however created, produced, stored or maintained, including but not limited to records reflecting communications, charts, lists, logs, spreadsheets, financial information or analyses, books, papers, files, notes, memoranda, reports, schedules, charts, lists, transcriptions, correspondence, telegrams, telexes, wire messages, telephone messages, calendars, diaries, budgets, invoices, audio and video recordings, electronic mail, electronic data compilations, computer disks (or hard copies of the data contained on such disks) and other electronic media, microfilm, microfiche and storage devices.

3. Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

4. Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

5. The disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and each of the functional words "each," "every," "any" and "all" shall be deemed to include each of the other functional words.

6. The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic and includes without limitation:  conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as electronic mail, messaging services such as instant messaging, text messages, Twitter messages, and Facebook posts and messages), and telephone lines and wires.

7. A communication or document "concerning," "involving," "relating," "related" or "which relates" to any given subject means any communication or document that

constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

## DOCUMENTS TO BE PRODUCED

Produce the following documents:

1. All documents and communications relating to standby letters of credit, bank guarantees, medium term notes, "platform trading," "high yield trading," trading programs, promissory notes, leased or collateralized or monetized financial instruments, private placement programs, and similar investments including, but not limited to, emails, investment agreements, copies or screenshots of the instruments, lease agreements, escrow agreements, and offering and promotional materials. Such investments include, but are not limited to, investments offered by or through Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC at any time since January 1, 2009.

2. All documents and communications relating to business, financial, and/or investment transactions, whether completed or not, in which Fortitude Investing, LLC has been in any way involved between December 1, 2011 and the present.

3. All documents relating to the transfer of money in connection with the transactions and investments specified in Items 1 and 2 above, including any wiring instructions, wiring confirmations, checks, deposits, withdrawals, and bank statements.

4. All documents relating to the use of monies associated with the transactions and investments specified in Items 1 and 2 above and where any such monies are currently located, including the location of any assets purchased or investments made with such monies.

5. Documents sufficient to identify (or a list identifying) by account name, account number, and financial institution, all accounts held or controlled by or for Fortitude Investing, LLC or in which Fortitude Investing, LLC has or had any interest at any time since January 1, 2009.

6. All financial records for the accounts identified in response to Item 5 above. Such documents should include, without limitation, all account origination forms, financial statements, bank account statements, brokerage records, and records of all monies received or disbursed.

7. All tax records of Fortitude Investing, LLC.

8. Documents sufficient to identify (or a list identifying) by name all past and current officers, directors and employees of Fortitude Investing, LLC, and all addresses,

telephone numbers, and email addresses used by such individuals at any time since January 1, 2009.

9. Documents sufficient to identify (or a list of) all telephone numbers and email accounts used by Fortitude Investing, LLC at any time since January 1, 2009. Such documents (or list) should identify the telephone numbers and email addresses, the periods in which those telephone numbers and email addresses were used, and the telephone carrier and email account provider for each telephone number and email address.

10. All telephone records of Fortitude Investing, LLC.

11. All documents relating to the allegations made and transactions identified in the complaints filed in the following actions:

      a. <u>LNJ Enterprises LLC v. Fortitude Investing, LLC et al.</u>, 1:09-cv-00757 (RMB) (D.N.J. Feb. 19, 2009);

      b. <u>Timothy F. Pasch v. Brett Cooper, et al.</u>, L-3447-11 (Sup. Ct. N.J., Nov. 8, 2011).

12. All contact lists or address lists used by Fortitude Investing, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009, including such lists from all computers and portable hardware devices, such as those contained in email accounts and portable phones or other portable communications devices.

13. All calendars, whether maintained in hard copy or electronically, that were used by or for Fortitude Investing, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009.

14. Produce all emails and all other types of electronic messages, other than those of a purely personal nature, sent or received by or on behalf of Fortitude Investing, LLC and/or its past and current officers, directors and employees, at any time since December 1, 2011.

**<u>Identification and Preservation of Computers and Portable Hardware</u>**
**<u>Devices and Production of Forensic Images</u>**

Identify and preserve all computers and portable hardware devices responsive to the following requests. Fortitude Investing, LLC may be required to produce the computers and portable hardware devices, or forensic images of them, at a later date.

1. Identify all computers and portable hardware devices used by Fortitude Investing, LLC and its past and current officers, directors and employees at any time since January 1, 2009, by make, model, provider name (e.g. carrier), Electronic Serial Number (ESN), Mobile Equipment Identity (MEID), International Mobile Subscriber Identity (IMSI), Integrated Circuit Card Identifier (ICCID), and International Mobile Equipment Identifier (IMEI). Provide a chain of custody identifying the person or persons who currently has/have physical possession of each computer and portable hardware device.

2. Preserve all computers and portable hardware devices used by Fortitude Investing, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009, including, but not limited to, Subscriber Identity Module (SIM) cards, adapter cards, memory cards, flash cards, and security instruments, such as hardware encryption or password devices, as well as electronic data associated with those devices on other computers, such as native, synchronization, or backup files like Apple iPhone backup files or Research in Motion's BlackBerry Inter@active Pager Backup/Restore (IPD) files.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply
### Information Voluntarily or Directed to Supply Information
### Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

SEC 1662 (09-11)

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.*   If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

**C. Submissions and Settlements**

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

**D. Freedom of Information Act**

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

**E. Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena.*   The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.*   One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

## F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

## G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

## H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



## U.S. Securities and Exchange Commission

## <u>Data Delivery Standards</u>

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses *Concordance®* 2007 v9.58 and *Concordance Image®* v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below must be discussed with and approved by the legal and technical staff of the Division of Enforcement. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ................................................................................................................................1

Delivery Formats.....................................................................................................................................2

    I.   Concordance® Production...........................................................................................................2

        1.  Images ...............................................................................................................................2

        2.  Concordance Image® Cross-Reference File ......................................................................2

        3.  Data File.............................................................................................................................3

        4.  Text ....................................................................................................................................5

        5.  Linked Native Files ...........................................................................................................6

    II.  Audio Files ...............................................................................................................................6

    III.  Video Files.................................................................................................................................6

    IV.  Electronic Trade and Bank Records .........................................................................................6

    V.  Electronic Phone Records.........................................................................................................7

    VI.  Adobe PDF File Production......................................................................................................7

    VII.  Email Native File Production ...................................................................................................7

## General Instructions

1.  A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
    The following information should be included in the letter:
    a.  List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
    b.  List of custodians, identifying:
        1)  The Bates range (and any gaps therein) for each custodian
        2)  Total number of records for each custodian
        3)  Total number of images for each custodian
        4)  Total number of native files for each custodian
    c.  List of fields in the order in which they are listed in the data file.
    d.  Time zone in which emails were standardized during conversion (email collections only).
2.  Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
3   Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
4.  Label all media with the following:
    a.  Case number
    b.  Production date
    c.  Bates range

d. Disk number (1 of X), if applicable
5. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6. All productions should be checked and produced free of computer viruses.
7. All produced media should be encrypted.
8. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

## Delivery Formats

### I.  *Concordance®* Production

All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:
The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

### 1.  Images
   a. Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
   b. File names cannot contain embedded spaces.
   c. Bates numbers should be endorsed on the lower right corner of all images.
   d. The number of TIFF files per folder should not exceed 500 files.
   e. Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
      1) PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
      2) AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
      3) Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

### 2.  *Concordance Image®* Cross-Reference File
The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

| | |
|---|---|
| *ImageID:* | The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.* |
| *VolumeLabel:* | Optional |
| *ImageFilePath:* | The full path to the image file. |
| *DocumentBreak:* | The letter "Y" denotes the first page of a document.  If this field is blank, then the page is not the first page of a document. |
| *FolderBreak:* | Leave empty |
| *BoxBreak:* | Leave empty |
| *PageCount:* | Optional |

Sample

```
IMG0000001, ,E:\001\IMG0000001.TIF,Y,,,
IMG0000002, ,E:\001\IMG0000002.TIF,,,,
IMG0000003, ,E:\001\IMG0000003.TIF,,,,
IMG0000004, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000005, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000006, ,E:\001\IMG0000003.TIF,,,,
```

3. **Data File**
   The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance*® database.

   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance*® default delimiters:
      | Comma | , | ASCII character (020) |
      |---|---|---|
      | Quote | þ | ASCII character (254) |
      | Newline | ® | ASCII character (174) |

   c. Date fields should be provided in the format:  mm/dd/yyyy
   d. All attachments should sequentially follow the parent document/email.
   e. All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).
   f. The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
      1) FIRSTBATES:  Beginning Bates number
      2) LASTBATES:   Ending Bates number
      3) IMAGEID:     Image Key field
      4) CUSTODIAN:   Individual from whom the document originated
      5) OCRTEXT:     Optical Character Recognition text

   Sample

   ```
   þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþ
   þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþ
   þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþ
   þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþ
   ```

   Sample of .DAT file:

   ```
   þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþþOCRTEXTþ
   þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþþ*** IMG0000001 ***®®The world of investing is
   fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed
   by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why
   investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities
   markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that govern the
   securities industry in the United States derive from a simple and straightforward concept: all investors, whether
   large institutions or private individuals, should have access to certain basic facts about an investment prior to
   buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful
   financial and other information to the public. This provides a common pool of knowledge for all investors to use
   to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely,
   comprehensive, and accurate information can people make sound investment decisions.þ
   þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþþ***IMG0000003 ***®®The result of this
   information flow is a far more active, efficient, and transparent capital market that facilitates the capital formation
   so important to our nation's economy.þ
   þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþþ *** IMG0000004 ***®®To insure that this
   objective is always being met, the SEC continually works with all major market participants, including especially
   the investors in our securities markets, to listen to their concerns and to learn from their experience.®® ***
   IMG0000005 ***®®The SEC oversees the key participants in the securities world, including securities
   exchanges, securities brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
   primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and
   protecting against fraud.þ
   ```

U.S. Securities and Exchange Commission
Data Delivery Standards

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email **This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments **The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided Native: Individual from whom the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent Native: (empty) **This data must be a separate field and cannot be combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |

| | | |
|---|---|---|
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4. **Text**
   Searchable text of the entire document must be provided for every record, at the document level.

   a. Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance®* ImageID .

Sample page markers with OCR text:

---

*** IMG0000001 ***

The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.

*** IMG0000002 ***

The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

---

c. For redacted documents, provide the full text for the redacted version.

d. Delivery
The text can be delivered two ways:
1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
2) Included in the .DAT file.

5. **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
a. Native file documents must be named per the FIRSTBATES number.
b. The full path of the native file must be provided in the .DAT file for the LINK field.
c. The number of native files per folder should not exceed 500 files.

## II.   Audio Files
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | CALLER_NAME or CALLER_ID: | Caller's name or identification number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | DATE: | Date of call |
| 4) | TIME: | Time of call |
| 5) | CALLED_PARTY: | Name of the party called |
| 6) | CALLED_NUMBER: | Called party's phone number |
| 7) | FILENAME: | Filename of audio file |

## III.   Video Files
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## IV.   Electronic Trade and Bank Records
When producing electronic trade and bank records, provide the files in one of the following formats:

1. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.
2. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## V. Electronic Phone Records

1. Delimited text file with header information detailing the field structure.
2. Comma Separated Value file (.csv) with header information detailing the field structure.
3. MS Excel spreadsheet with header information detailing the field structure.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | ACCT_NUMBER: | Caller's telephone account number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | CALLED_NUMBER: | Called party's phone number |
| 4) | DATE: | Date of call |
| 5) | START_TIME: | Start time of call |
| 6) | END_TIME: | End time of call |
| 7) | DURATION: | Duration in minutes of the call |

## VI. Adobe PDF File Production

When approved, Adobe PDF files may be produced in native file format.

1. PDF files should be produced in separate folders named by the Custodian.
2. All PDFs must be unitized at the document level, i.e. each PDF should represent a discrete document; a single PDF cannot contain multiple documents.
3. All PDF files must contain embedded text that includes all discernable words within the document, not selected text only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## VII. Email Native File Production

When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE:   (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

March 27, 2012

**Via UPS**
Custodian of Records
Global Funding Systems, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

    Re:  <u>In the Matter of Certain Leased Instruments (HO-11813)</u>

Mr. Cooper:

    Pursuant to a formal order of investigation entered by the Commission in the above referenced matter, the staff of the Division of Enforcement has issued the enclosed subpoena, which requires Global Funding Systems, LLC to produce certain documents to officers of the Commission. The documents required by the subpoena should be sent to:

      Christopher M. McLean
      United States Securities and Exchange Commission
      100 F Street, NE
      Washington, DC 20549

    Documents produced pursuant to the subpoena should be accompanied by a list briefly identifying each document (or group of documents) and the paragraph(s) of the subpoena attachment to which each document (or group of documents) relates. In addition, documents should be produced so that one document is clearly and separately identifiable from another document, whether by staples, paper clips, slip sheets or in another manner that distinguishes one document from another. Please mark each document in an appropriate place indicating that the document was produced by you and serially number the pages of all the documents submitted. Please also indicate whether a diligent search has been made for the subpoenaed material and whether you have produced all of the items called for by the subpoena. If you produce copies, please ensure that each copy is an exact duplicate of the original (e.g., including any facsimile lines), and all originals <u>must</u> be retained so they will be available if and when the staff notifies you that such originals are necessary.

    Please note that while documents should be produced to us in a manner that indicates the items of the subpoena to which a document is responsive, it is also imperative that we be able to identify the source of each document produced (i.e., the name of the person(s) who have or had

possession, custody, and control over, and the location of, each document). In addition, we require responsive documents that are in electronic form to be produced in an electronic format consistent with the Commission's Data Delivery Standards, which are attached. We also request that responsive documents which are in hard copy be produced in electronic form if at all possible.

If any of the documents called for by the subpoena are not produced, for any reason, please submit a list stating for each such document not produced: (a) the creator(s) of the document; (b) the date of the document; (c) the present, or last known, custodian of the document; (d) the subject matter of the document; (e) all persons known to have been furnished the document or a photocopy of the document and all persons known to have been informed of the document's substance; and (f) the reason the document is not being produced. In addition, if any document is withheld on the basis of a claim of attorney-client privilege, also identify the attorney and client involved.

Please review the enclosed SEC Form 1662, because it includes important supplemental information and a List of Routine Uses that apply to the production of documents pursuant to subpoenas. In addition, please complete the attached Declaration Certifying Records.

This investigation should not be construed as an indication by the Commission or its staff that any violations of law have occurred, nor should it be considered a reflection upon any person, entity, or security.

Finally, please note that in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

If you have any other questions, you may call me at (202) 551-4522. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Christopher M. McLean
Staff Attorney

Enclosures:    Subpoena with Attachment
               Declaration Certifying Records
               SEC Form 1662
               SEC Data Delivery Standards



## SUBPOENA
# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION
### In the Matter of Certain Leased Instruments, HO-11813

To:   Global Funding Systems, LLC
      c/o Custodian of Records
      229 Carriage Hill Drive
      Moorestown, NJ 08057

---

☑   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission on **April 11, 2012 or as otherwise directed by the staff of the Commission.**

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____      Date:   March 27, 2012

Christopher McLean
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-4547

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**ATTACHMENT TO SUBPOENA**
March 27, 2012
(Global Funding Systems, LLC)

**DEFINITIONS**

The following definitions apply to this attachment:

1. Unless otherwise stated, the time period of the documents requested in this attachment is January 1, 2009 to the present.

2. The term "document" means all records, materials and other tangible forms of expression in your possession or custody or under your control, whether originals, copies, annotated copies, drafts or final versions, and however created, produced, stored or maintained, including but not limited to records reflecting communications, charts, lists, logs, spreadsheets, financial information or analyses, books, papers, files, notes, memoranda, reports, schedules, charts, lists, transcriptions, correspondence, telegrams, telexes, wire messages, telephone messages, calendars, diaries, budgets, invoices, audio and video recordings, electronic mail, electronic data compilations, computer disks (or hard copies of the data contained on such disks) and other electronic media, microfilm, microfiche and storage devices.

3. Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

4. Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

5. The disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and each of the functional words "each," "every," "any" and "all" shall be deemed to include each of the other functional words.

6. The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic and includes without limitation: conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as electronic mail, messaging services such as instant messaging, text messages, Twitter messages, and Facebook posts and messages), and telephone lines and wires.

7. A communication or document "concerning," "involving," "relating," "related" or "which relates" to any given subject means any communication or document that

constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

## DOCUMENTS TO BE PRODUCED

Produce the following documents:

1. All documents and communications relating to standby letters of credit, bank guarantees, medium term notes, "platform trading," "high yield trading," trading programs, promissory notes, leased or collateralized or monetized financial instruments, private placement programs, and similar investments including, but not limited to, emails, investment agreements, copies or screenshots of the instruments, lease agreements, escrow agreements, and offering and promotional materials. Such investments include, but are not limited to, investments offered by or through Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC at any time since January 1, 2009.

2. All documents and communications relating to business, financial, and/or investment transactions, whether completed or not, in which Global Funding Systems, LLC has been in any way involved between December 1, 2011 and the present.

3. All documents relating to the transfer of money in connection with the transactions and investments specified in Items 1 and 2 above, including any wiring instructions, wiring confirmations, checks, deposits, withdrawals, and bank statements.

4. All documents relating to the use of monies associated with the transactions and investments specified in Items 1 and 2 above and where any such monies are currently located, including the location of any assets purchased or investments made with such monies.

5. Documents sufficient to identify (or a list identifying) by account name, account number, and financial institution, all accounts held or controlled by or for Global Funding Systems, LLC or in which Global Funding Systems, LLC has or had any interest at any time since January 1, 2009.

6. All financial records for the accounts identified in response to Item 5 above. Such documents should include, without limitation, all account origination forms, financial statements, bank account statements, brokerage records, and records of all monies received or disbursed.

7. All tax records of Global Funding Systems, LLC.

8. Documents sufficient to identify (or a list identifying) by name all past and current officers, directors and employees of Global Funding Systems, LLC, and all addresses,

telephone numbers, and email addresses used by such individuals at any time since January 1, 2009.

9. Documents sufficient to identify (or a list of) all telephone numbers and email accounts used by Global Funding Systems, LLC at any time since January 1, 2009.  Such documents (or list) should identify the telephone numbers and email addresses, the periods in which those telephone numbers and email addresses were used, and the telephone carrier and email account provider for each telephone number and email address.

10. All telephone records of Global Funding Systems, LLC.

11. All documents relating to the allegations made and transactions identified in the complaints filed in the following actions:

     a. <u>LNJ Enterprises LLC v. Fortitude Investing, LLC et al.</u>, 1:09-cv-00757 (RMB) (D.N.J. Feb. 19, 2009);

     b. <u>Timothy F. Pasch v. Brett Cooper, et al.</u>, L-3447-11 (Sup. Ct. N.J., Nov. 8, 2011).

12. All contact lists or address lists used by Global Funding Systems, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009, including such lists from all computers and portable hardware devices, such as those contained in email accounts and portable phones or other portable communications devices.

13. All calendars, whether maintained in hard copy or electronically, that were used by or for Global Funding Systems, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009.

14. Produce all emails and all other types of electronic messages, other than those of a purely personal nature, sent or received by or on behalf of Global Funding Systems, LLC and/or its past and current officers, directors and employees, at any time since December 1, 2011.

**Identification and Preservation of Computers and Portable Hardware Devices and Production of Forensic Images**

Identify and preserve all computers and portable hardware devices responsive to the following requests.  Global Funding Systems, LLC may be required to produce the computers and portable hardware devices, or forensic images of them, at a later date.

1. Identify all computers and portable hardware devices used by Global Funding Systems, LLC and its past and current officers, directors and employees at any time since January 1, 2009, by make, model, provider name (e.g. carrier), Electronic Serial Number (ESN), Mobile Equipment Identity (MEID), International Mobile Subscriber Identity (IMSI), Integrated Circuit Card Identifier (ICCID), and International Mobile Equipment

Identifier (IMEI). Provide a chain of custody identifying the person or persons who currently has/have physical possession of each computer and portable hardware device.

2. Preserve all computers and portable hardware devices used by Global Funding Systems, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009, including, but not limited to, Subscriber Identity Module (SIM) cards, adapter cards, memory cards, flash cards, and security instruments, such as hardware encryption or password devices, as well as electronic data associated with those devices on other computers, such as native, synchronization, or backup files like Apple iPhone backup files or Research in Motion's BlackBerry Inter@active Pager Backup/Restore (IPD) files.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply
### Information Voluntarily or Directed to Supply Information
### Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

SEC 1662 (09-11)

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.  *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

### C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation.  Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding.  Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner.  It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto.  Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings.  That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

### D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA.  That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received.  If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.*  The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee, the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

5



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses *Concordance®* 2007 v9.58 and *Concordance Image®* v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below must be discussed with and approved by the legal and technical staff of the Division of Enforcement. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ............................................................................................................................................1

Delivery Formats................................................................................................................................................2

   I.  Concordance® Production........................................................................................................................2

      1. Images ...........................................................................................................................................2

      2. Concordance Image® Cross-Reference File ........................ ..........................................................2

      3. Data File .......................................................................................................................................3

      4. Text ........................................................................................................................................ ....5

      5. Linked Native Files ......................................................................................................................6

   II.  Audio Files ............................................................................................................................................6

   III.  Video Files.............................................................................................................................................6

   IV.  Electronic Trade and Bank Records ......................................................................................................6

   V.  Electronic Phone Records ......................................................................................................................7

   VI.  Adobe PDF File Production...................................................................................................................7

   VII.  Email Native File Production ................................................................................................................7

**General Instructions**
1. A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
   The following information should be included in the letter:
   a. List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
   b. List of custodians, identifying:
      1) The Bates range (and any gaps therein) for each custodian
      2) Total number of records for each custodian
      3) Total number of images for each custodian
      4) Total number of native files for each custodian
   c. List of fields in the order in which they are listed in the data file.
   d. Time zone in which emails were standardized during conversion (email collections only).
2. Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
3. Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
4. Label all media with the following:
   a. Case number
   b. Production date
   c. Bates range

    d.   Disk number (1 of X), if applicable
5.  Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6.  All productions should be checked and produced free of computer viruses.
7.  All produced media should be encrypted.
8.  Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

## Delivery Formats

### I.  *Concordance®* Production

All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:
The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

1.  **Images**
    a.  Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
    b.  File names cannot contain embedded spaces.
    c.  Bates numbers should be endorsed on the lower right corner of all images.
    d.  The number of TIFF files per folder should not exceed 500 files.
    e.  Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
        1)  PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
        2)  AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
        3)  Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

2.  *Concordance Image®* Cross-Reference File
The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line.  There must be a line in the cross-reference file for every image in the database.

The format is as follows:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

    *ImageID:*      The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.*

    *VolumeLabel:*    Optional
    *ImageFilePath:*  The full path to the image file.
    *DocumentBreak:* The letter "Y" denotes the first page of a document.  If this field is blank, then the page is not the first page of a document.
    *FolderBreak:*    Leave empty
    *BoxBreak:*      Leave empty
    *PageCount:*    Optional

Sample

```
IMG0000001, ,E:\001\IMG0000001.TIF,Y,,,
IMG0000002, ,E:\001\IMG0000002.TIF,,,,
IMG0000003, ,E:\001\IMG0000003.TIF,,,,
IMG0000004, ,E:\001\IMG0000004.TIF,Y,,,
IMG0000005, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000006, ,E:\001\IMG0000003.TIF,,,,
```

3.  **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

  a.  The first line of the .DAT file must be a header row identifying the field names.
  b.  The .DAT file must use the following *Concordance®* default delimiters:

| | | |
|---|---|---|
| Comma | , | ASCII character (020) |
| Quote | þ | ASCII character (254) |
| Newline | ® | ASCII character (174) |

  c.  Date fields should be provided in the format:  mm/dd/yyyy
  d.  All attachments should sequentially follow the parent document/email.
  e.  All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

  f.  The .DAT file for scanned paper collections must contain, at a minimum, the following fields:

  1)  FIRSTBATES:   Beginning Bates number
  2)  LASTBATES:   Ending Bates number
  3)  IMAGEID:   Image Key field
  4)  CUSTODIAN:   Individual from whom the document originated
  5)  OCRTEXT:   Optical Character Recognition text

Sample

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþ
þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþ
þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþ
þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþ
```

Sample of .DAT file:

```
þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþþOCRTEXTþ
þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþþ*** IMG0000001 ***®®The world of investing is
fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed
by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why
investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities
markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that govern the
securities industry in the United States derive from a simple and straightforward concept: all investors, whether
large institutions or private individuals, should have access to certain basic facts about an investment prior to
buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful
financial and other information to the public. This provides a common pool of knowledge for all investors to use
to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely,
comprehensive, and accurate information can people make sound investment decisions.þ
þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþþ***IMG0000003 ***®®The result of this
information flow is a far more active, efficient, and transparent capital market that facilitates the capital formation
so important to our nation's economy.þ
þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþþ *** IMG0000004 ***®®To insure that this
objective is always being met, the SEC continually works with all major market participants, including especially
the investors in our securities markets, to listen to their concerns and to learn from their experience.®® ***
IMG0000005 ***®®The SEC oversees the key participants in the securities world, including securities
exchanges, securities brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and
protecting against fraud.þ
```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated<br>for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated<br>in each record representing an attachment "child"<br>document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in<br>each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document<br>originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple<br>entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be<br>combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the<br>FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email:  original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email:  Unique Message ID<br>Native: (empty) |
| TEXT | From: Smith, John<br>Sent:  Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4.  **Text**
    Searchable text of the entire document must be provided for every record, at the document level.

    a.  Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance®* ImageID .

Sample page markers with OCR text:

> *** IMG0000001 ***
>
> The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
>
> *** IMG0000002 ***
>
> The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

c. For redacted documents, provide the full text for the redacted version.

d. Delivery
   The text can be delivered two ways:
   1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
   2) Included in the .DAT file.

5. **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number.
   b. The full path of the native file must be provided in the .DAT file for the LINK field.
   c. The number of native files per folder should not exceed 500 files.

**II. Audio Files**
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | CALLER_NAME or CALLER_ID: | Caller's name or identification number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | DATE: | Date of call |
| 4) | TIME: | Time of call |
| 5) | CALLED_PARTY: | Name of the party called |
| 6) | CALLED_NUMBER: | Called party's phone number |
| 7) | FILENAME: | Filename of audio file |

**III. Video Files**
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**IV. Electronic Trade and Bank Records**
When producing electronic trade and bank records, provide the files in one of the following formats:

1.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**V.  Electronic Phone Records**

1.  Delimited text file with header information detailing the field structure.
2.  Comma Separated Value file (.csv) with header information detailing the field structure.
3.  MS Excel spreadsheet with header information detailing the field structure.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | ACCT_NUMBER: | Caller's telephone account number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | CALLED_NUMBER: | Called party's phone number |
| 4) | DATE: | Date of call |
| 5) | START_TIME: | Start time of call |
| 6) | END_TIME: | End time of call |
| 7) | DURATION: | Duration in minutes of the call |

**VI.  Adobe PDF File Production**

When approved, Adobe PDF files may be produced in native file format.

1.  PDF files should be produced in separate folders named by the Custodian.
2.  All PDFs must be unitized at the document level, i.e. each PDF should represent a discrete document; a single PDF cannot contain multiple documents.
3.  All PDF files must contain embedded text that  includes all discernable words within the document, not selected text only.  This requires all layers of the PDF to be flattened first.
4.  If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**VII.  Email Native File Production**

When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE:   (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

March 27, 2012

**Via UPS**
Custodian of Records
Muse of Dreams, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:    In the Matter of Certain Leased Instruments (HO-11813)

Mr. Cooper:

Pursuant to a formal order of investigation entered by the Commission in the above referenced matter, the staff of the Division of Enforcement has issued the enclosed subpoena, which requires Muse of Dreams, LLC to produce certain documents to officers of the Commission. The documents required by the subpoena should be sent to:

Christopher M. McLean
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

Documents produced pursuant to the subpoena should be accompanied by a list briefly identifying each document (or group of documents) and the paragraph(s) of the subpoena attachment to which each document (or group of documents) relates. In addition, documents should be produced so that one document is clearly and separately identifiable from another document, whether by staples, paper clips, slip sheets or in another manner that distinguishes one document from another. Please mark each document in an appropriate place indicating that the document was produced by you and serially number the pages of all the documents submitted. Please also indicate whether a diligent search has been made for the subpoenaed material and whether you have produced all of the items called for by the subpoena. If you produce copies, please ensure that each copy is an exact duplicate of the original (e.g., including any facsimile lines), and all originals <u>must</u> be retained so they will be available if and when the staff notifies you that such originals are necessary.

Please note that while documents should be produced to us in a manner that indicates the items of the subpoena to which a document is responsive, it is also imperative that we be able to identify the source of each document produced (i.e., the name of the person(s) who have or had

possession, custody, and control over, and the location of, each document).  In addition, we require responsive documents that are in electronic form to be produced in an electronic format consistent with the Commission's Data Delivery Standards, which are attached.  We also request that responsive documents which are in hard copy be produced in electronic form if at all possible.

If any of the documents called for by the subpoena are not produced, for any reason, please submit a list stating for each such document not produced: (a) the creator(s) of the document; (b) the date of the document; (c) the present, or last known, custodian of the document; (d) the subject matter of the document; (e) all persons known to have been furnished the document or a photocopy of the document and all persons known to have been informed of the document's substance; and (f) the reason the document is not being produced.  In addition, if any document is withheld on the basis of a claim of attorney-client privilege, also identify the attorney and client involved.

Please review the enclosed SEC Form 1662, because it includes important supplemental information and a List of Routine Uses that apply to the production of documents pursuant to subpoenas.  In addition, please complete the attached Declaration Certifying Records.

This investigation should not be construed as an indication by the Commission or its staff that any violations of law have occurred, nor should it be considered a reflection upon any person, entity, or security.

Finally, please note that in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

If you have any other questions, you may call me at (202) 551-4522.  If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Christopher M. McLean
Staff Attorney

Enclosures:     Subpoena with Attachment
                Declaration Certifying Records
                SEC Form 1662
                SEC Data Delivery Standards



### SUBPOENA
# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION
### In the Matter of Certain Leased Instruments, HO-11813

To:   Muse of Dreams, LLC
      c/o Custodian of Records
      229 Carriage Hill Drive
      Moorestown, NJ 08057

☑   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission on **April 11, 2012 or as otherwise directed by the staff of the Commission.**

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:  _____          Date:   March 27, 2012
      Christopher McLean
      United States Securities and Exchange Commission
      100 F Street, NE
      Washington, DC 20549
      (202) 551-4547

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

<u>**ATTACHMENT TO SUBPOENA**</u>
March 27, 2012
(Muse of Dreams, LLC)

<u>**DEFINITIONS**</u>

The following definitions apply to this attachment:

1.  Unless otherwise stated, the time period of the documents requested in this attachment is <u>January 1, 2009 to the present.</u>

2.  The term "document" means all records, materials and other tangible forms of expression <u>in your possession or custody or under your control</u>, whether originals, copies, annotated copies, drafts or final versions, and however created, produced, stored or maintained, including but not limited to records reflecting communications, charts, lists, logs, spreadsheets, financial information or analyses, books, papers, files, notes, memoranda, reports, schedules, charts, lists, transcriptions, correspondence, telegrams, telexes, wire messages, telephone messages, calendars, diaries, budgets, invoices, audio and video recordings, electronic mail, electronic data compilations, computer disks (or hard copies of the data contained on such disks) and other electronic media, microfilm, microfiche and storage devices.

3.  Reference to a person shall also include that person's trusts, affiliates, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

4.  Reference to an entity shall also include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners and independent contractors, as well as aliases, code names, trade names or business names used by, or formerly used by, any of the foregoing.

5.  The disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and each of the functional words "each," "every," "any" and "all" shall be deemed to include each of the other functional words.

6.  The term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral, written or electronic and includes without limitation: conversations, meetings and discussions in person; conversations, meetings and discussions by telephone; and written correspondence through the use of the mails, courier services, electronic media (such as electronic mail, messaging services such as instant messaging, text messages, Twitter messages, and Facebook posts and messages), and telephone lines and wires.

7.  A communication or document "concerning," "involving," "relating," "related" or "which relates" to any given subject means any communication or document that

constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents.

## DOCUMENTS TO BE PRODUCED

Produce the following documents:

1. All documents and communications relating to standby letters of credit, bank guarantees, medium term notes, "platform trading," "high yield trading," trading programs, promissory notes, leased or collateralized or monetized financial instruments, private placement programs, and similar investments including, but not limited to, emails, investment agreements, copies or screenshots of the instruments, lease agreements, escrow agreements, and offering and promotional materials. Such investments include, but are not limited to, investments offered by or through Global Funding Systems, LLC, Dream Holdings, LLC, Muse of Dreams, LLC, Re-Op Group, LLC, Fortitude Investing, LLC, FII-LTD, JBT Holdings, LLC at any time since January 1, 2009.

2. All documents and communications relating to business, financial, and/or investment transactions, whether completed or not, in which Muse of Dreams, LLC has been in any way involved between December 1, 2011 and the present.

3. All documents relating to the transfer of money in connection with the transactions and investments specified in Items 1 and 2 above, including any wiring instructions, wiring confirmations, checks, deposits, withdrawals, and bank statements.

4. All documents relating to the use of monies associated with the transactions and investments specified in Items 1 and 2 above and where any such monies are currently located, including the location of any assets purchased or investments made with such monies.

5. Documents sufficient to identify (or a list identifying) by account name, account number, and financial institution, all accounts held or controlled by or for Muse of Dreams, LLC or in which Muse of Dreams, LLC has or had any interest at any time since January 1, 2009.

6. All financial records for the accounts identified in response to Item 5 above. Such documents should include, without limitation, all account origination forms, financial statements, bank account statements, brokerage records, and records of all monies received or disbursed.

7. All tax records of Muse of Dreams, LLC.

8. Documents sufficient to identify (or a list identifying) by name all past and current officers, directors and employees of Muse of Dreams, LLC, and all addresses, telephone numbers, and email addresses used by such individuals at any time since January 1, 2009.

9. Documents sufficient to identify (or a list of) all telephone numbers and email accounts used by Muse of Dreams, LLC at any time since January 1, 2009. Such documents (or list) should identify the telephone numbers and email addresses, the periods in which those telephone numbers and email addresses were used, and the telephone carrier and email account provider for each telephone number and email address.

10. All telephone records of Muse of Dreams, LLC.

11. All documents relating to the allegations made and transactions identified in the complaints filed in the following actions:

   a. LNJ Enterprises LLC v. Fortitude Investing, LLC et al., 1:09-cv-00757 (RMB) (D.N.J. Feb. 19, 2009);

   b. Timothy F. Pasch v. Brett Cooper, et al., L-3447-11 (Sup. Ct. N.J., Nov. 8, 2011).

12. All contact lists or address lists used by Muse of Dreams, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009, including such lists from all computers and portable hardware devices, such as those contained in email accounts and portable phones or other portable communications devices.

13. All calendars, whether maintained in hard copy or electronically, that were used by or for Muse of Dreams, LLC and/or its past and current officers, directors and employees at any time since January 1, 2009.

14. Produce all emails and all other types of electronic messages, other than those of a purely personal nature, sent or received by or on behalf of Muse of Dreams, LLC and/or its past and current officers, directors and employees, at any time since December 1, 2011.

**Identification and Preservation of Computers and Portable Hardware Devices and Production of Forensic Images**

Identify and preserve all computers and portable hardware devices responsive to the following requests. Muse of Dreams, LLC may be required to produce the computers and portable hardware devices, or forensic images of them, at a later date.

1. Identify all computers and portable hardware devices used by Muse of Dreams, LLC and its past and current officers, directors and employees at any time since January 1, 2009, by make, model, provider name (e.g. carrier), Electronic Serial Number (ESN), Mobile Equipment Identity (MEID), International Mobile Subscriber Identity (IMSI), Integrated Circuit Card Identifier (ICCID), and International Mobile Equipment Identifier (IMEI). Provide a chain of custody identifying the person or persons who currently has/have physical possession of each computer and portable hardware device.

2. Preserve all computers and portable hardware devices used by Muse of Dreams, LLC and/or its past and current officers, directors and employees at any time since January 1,

2009, including, but not limited to, Subscriber Identity Module (SIM) cards, adapter cards, memory cards, flash cards, and security instruments, such as hardware encryption or password devices, as well as electronic data associated with those devices on other computers, such as native, synchronization, or backup files like Apple iPhone backup files or Research in Motion's BlackBerry Inter@active Pager Backup/Restore (IPD) files.

**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**Supplemental Information for Persons Requested to Supply**
**Information Voluntarily or Directed to Supply Information**
**Pursuant to a Commission Subpoena**

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States
> knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material
> fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses
> any false writing or document knowing the same to contain any false, fictitious or fraudulent
> statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding
> shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of
> his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal
> investigative proceeding the Commission may for good cause deny such request. In any event, any
> witness, upon proper identification, shall have the right to inspect the official transcript of the witness'
> own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which
> a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or
> certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he
> does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by
> law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

SEC 1662 (09-11)

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.*  If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation.  Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding.  Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner.  It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto.  Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings.  That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA.  That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received.  If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

## E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.*  The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

2

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

## F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

## G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

## H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

4

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



## U.S. Securities and Exchange Commission

## Data Delivery Standards

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses *Concordance®* 2007 v9.58 and *Concordance Image®* v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below must be discussed with and approved by the legal and technical staff of the Division of Enforcement. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ...................................................................................................................................1

Delivery Formats.........................................................................................................................................2

   I.  Concordance® Production.................................................................................................................2

      1. Images ...................................................................................................................................2

      2. Concordance Image® Cross-Reference File ........................................................................2

      3. Data File ...............................................................................................................................3

      4. Text ......................................................................................................................................5

      5. Linked Native Files ..............................................................................................................6

   II.  Audio Files .....................................................................................................................................6

   III.  Video Files......................................................................................................................................6

   IV.  Electronic Trade and Bank Records ...............................................................................................6

   V.  Electronic Phone Records...............................................................................................................7

   VI.  Adobe PDF File Production............................................................................................................7

   VII.  Email Native File Production .........................................................................................................7

**General Instructions**
1. A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
   The following information should be included in the letter:
   a. List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
   b. List of custodians, identifying:
      1) The Bates range (and any gaps therein) for each custodian
      2) Total number of records for each custodian
      3) Total number of images for each custodian
      4) Total number of native files for each custodian
   c. List of fields in the order in which they are listed in the data file.
   d. Time zone in which emails were standardized during conversion (email collections only).
2. Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
3. Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
4. Label all media with the following:
   a. Case number
   b. Production date
   c. Bates range

    d.  Disk number (1 of X), if applicable
5. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6. All productions should be checked and produced free of computer viruses.
7. All produced media should be encrypted.
8. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

**Delivery Formats**

I. *Concordance®* **Production**
All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:
The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

1. **Images**
   a. Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
   b. File names cannot contain embedded spaces.
   c. Bates numbers should be endorsed on the lower right corner of all images.
   d. The number of TIFF files per folder should not exceed 500 files.
   e. Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
      1) PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
      2) AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
      3) Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

2. *Concordance Image®* **Cross-Reference File**
   The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

   The format is as follows:
   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

   | | |
   |---|---|
   | *ImageID:* | The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.* |
   | *VolumeLabel:* | Optional |
   | *ImageFilePath:* | The full path to the image file. |
   | *DocumentBreak:* | The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document. |
   | *FolderBreak:* | Leave empty |
   | *BoxBreak:* | Leave empty |
   | *PageCount:* | Optional |

   Sample

```
IMG0000001, ,E:\001\IMG0000001.TIF,Y,,,
IMG0000002, ,E:\001\IMG0000002.TIF,,,,
IMG0000003, ,E:\001\IMG0000003.TIF,,,,
IMG0000004, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000005, ,E:\001\IMG0000003.TIF,Y,,,
IMG0000006, ,E:\001\IMG0000003.TIF,,,,
```

3. **Data File**
   The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance®* default delimiters:
      | | | |
      |---|---|---|
      | Comma | , | ASCII character (020) |
      | Quote | þ | ASCII character (254) |
      | Newline | ® | ASCII character (174) |

   c. Date fields should be provided in the format: mm/dd/yyyy
   d. All attachments should sequentially follow the parent document/email.
   e. All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

   f. The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
      1) FIRSTBATES:  Beginning Bates number
      2) LASTBATES:   Ending Bates number
      3) IMAGEID:     Image Key field
      4) CUSTODIAN:   Individual from whom the document originated
      5) OCRTEXT:     Optical Character Recognition text

   Sample

   ```
   þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþ
   þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþ
   þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþ
   þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþ
   ```

   Sample of .DAT file:

   ```
   þFIRSTBATESþþLASTBATESþþIMAGEIDþþCUSTODIANþþOCRTEXTþ
   þPC00000001þþPC00000002þþIMG0000001þþSmith, Johnþþ*** IMG0000001 ***®®The world of investing is
   fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed
   by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why
   investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities
   markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that govern the
   securities industry in the United States derive from a simple and straightforward concept: all investors, whether
   large institutions or private individuals, should have access to certain basic facts about an investment prior to
   buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful
   financial and other information to the public. This provides a common pool of knowledge for all investors to use
   to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely,
   comprehensive, and accurate information can people make sound investment decisions.þ
   þPC00000003þþPC00000003þþIMG0000003þþSmith, Johnþþ***IMG0000003 ***®®The result of this
   information flow is a far more active, efficient, and transparent capital market that facilitates the capital formation
   so important to our nation's economy.þ
   þPC00000004þþPC00000005þþIMG0000004þþSmith, Johnþþ *** IMG0000004 ***®®To insure that this
   objective is always being met, the SEC continually works with all major market participants, including especially
   the investors in our securities markets, to listen to their concerns and to learn from their experience.®® ***
   IMG0000005 ***®®The SEC oversees the key participants in the securities world, including securities
   exchanges, securities brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
   primarily with promoting the disclosure of important market-related information, maintaining fair dealing, and
   protecting against fraud.þ
   ```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated<br>    for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated<br>    in each record representing an attachment "child"<br>    document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in<br>    each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document<br>    originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple<br>    entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple<br>    entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>    entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>    entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be<br>    combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the<br>    FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4. **Text**

   Searchable text of the entire document must be provided for every record, at the document level.

   a. Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance*® ImageID .

Sample page markers with OCR text:

> *** IMG0000001 ***
>
> The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
>
> *** IMG0000002 ***
>
> The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

c. For redacted documents, provide the full text for the redacted version.

d. Delivery
The text can be delivered two ways:
1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
2) Included in the .DAT file.

5. **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
a. Native file documents must be named per the FIRSTBATES number.
b. The full path of the native file must be provided in the .DAT file for the LINK field.
c. The number of native files per folder should not exceed 500 files.

## II. Audio Files
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | CALLER_NAME or CALLER_ID: | Caller's name or identification number |
| 2) | CALLING_NUMBER: | Caller's phone number |
| 3) | DATE: | Date of call |
| 4) | TIME: | Time of call |
| 5) | CALLED_PARTY: | Name of the party called |
| 6) | CALLED_NUMBER: | Called party's phone number |
| 7) | FILENAME: | Filename of audio file |

## III. Video Files
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## IV. Electronic Trade and Bank Records
When producing electronic trade and bank records, provide the files in one of the following formats:

1. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.
2. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**V.   Electronic Phone Records**
1. Delimited text file with header information detailing the field structure.
2. Comma Separated Value file (.csv) with header information detailing the field structure.
3. MS Excel spreadsheet with header information detailing the field structure.
The metadata must include, at a minimum, the following fields:

1) ACCT_NUMBER:         Caller's telephone account number
2) CALLING_NUMBER:      Caller's phone number
3) CALLED_NUMBER:       Called party's phone number
4) DATE:                Date of call
5) START_TIME:          Start time of call
6) END_TIME:            End time of call
7) DURATION:            Duration in minutes of the call

**VI.   Adobe PDF File Production**
When approved, Adobe PDF files may be produced in native file format.
1. PDF files should be produced in separate folders named by the Custodian.
2. All PDFs must be unitized at the document level, i.e. each PDF should represent a discrete document; a single PDF cannot contain multiple documents.
3. All PDF files must contain embedded text that  includes all discernable words within the document, not selected text only.  This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**VII.   Email Native File Production**
When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.

# EXHIBIT B

| | |
|---|---|
| **From:** | UPS Quantum View |
| **To:** | McLean, Christopher |
| **Subject:** | UPS Delivery Notification, Tracking Number 1ZA41W65A290645467 |
| **Date:** | Wednesday, March 28, 2012 2:52:55 PM |



Discover more about
UPS:
Visit www.ups.com
Sign Up For
Additional E-Mail
From UPS
Read Compass
Online

My Choice

***Do not reply to this e-mail. UPS and SEC
CORPORATE HQ will not receive your reply.

**At the request of SEC CORPORATE HQ,
this notice is to confirm that the
following shipment has been delivered.**

**Important Delivery Information**

**Tracking Number:**  1ZA41W65A290645467
**Delivery Date /
Time:**  28-March-2012 / 2:33
PM
**Adult Signature
Captured**

**Delivery Location:** RESIDENTIAL
**Signed by:** COOPER

## Shipment Detail

**Ship To:**
Brett A. Cooper
Brett A. Cooper
229 CARRIAGE HILL DR
MOORESTOWN
NJ
08057
US

**Number of Packages:** 1
**UPS Service:**          NEXT DAY AIR
**Weight:**               1.0 LBS
**Reference Number 1:** 66211



© 2012 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.
For more information on UPS's privacy practices, refer to the UPS Privacy Policy.
Please do not reply directly to this e-mail. UPS will not receive any reply message.
For questions or comments, visit Contact UPS.

This communication contains proprietary information and may be confidential.  If you are not the intended recipient, the reading, copying, disclosure or other use of the contents of this e-mail is strictly prohibited and you are instructed to please delete this e-mail immediately.
Privacy Notice
Contact UPS


# EXHIBIT C



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE: (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

April 17, 2012

**Via UPS**
Brett Cooper
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:   In the Matter of Certain Leased Instruments (HO-11813)

Mr. Cooper:

Pursuant to the March 27, 2012 subpoena issued to you in the above-referenced investigation, you were required to produce documents to the staff of the Securities and Exchange Commission on or before April 11, 2012, and you are required to appear at the Commission for testimony on April 25, 2012. To date, you have not responded to the subpoena.

Please produce immediately the documents specified in the subpoena and contact me to discuss your testimony. If you fail to contact me by this Friday, April 20, 2012 to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

Sincerely,

Christopher M. McLean
Staff Attorney



DIVISION OF
ENFORCEMENT

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. McLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE:  (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

April 17, 2012

**Via UPS**
Custodian of Records
Dream Holdings, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:   In the Matter of Certain Leased Instruments (HO-11813)

To Whom It May Concern:

Pursuant to the March 27, 2012 subpoena issued to Dream Holdings, LLC in the above-referenced investigation, Dream Holdings, LLC was required to produce documents to the staff of the Securities and Exchange Commission on or before April 11, 2012.  To date, Dream Holdings, LLC has not responded to the subpoena.

Please produce immediately the documents specified in the subpoena.  If you fail to contact me by this Friday, April 20, 2012 to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

Sincerely,

Christopher M. McLean
Staff Attorney



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

DIVISION OF
ENFORCEMENT

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE: (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

April 17, 2012

**Via UPS**
Custodian of Records
FII-Ltd
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:     In the Matter of Certain Leased Instruments (HO-11813)

To Whom It May Concern:

Pursuant to the March 27, 2012 subpoena issued to FII-Ltd in the above-referenced investigation, FII-Ltd was required to produce documents to the staff of the Securities and Exchange Commission on or before April 11, 2012.  To date, FII-Ltd has not responded to the subpoena.

Please produce immediately the documents specified in the subpoena.  If you fail to contact me by this Friday, April 20, 2012 to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

Sincerely,

Christopher M. McLean
Staff Attorney



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 F STREET, NE
WASHINGTON, DC 20549**

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE:   (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

April 17, 2012

**Via UPS**
Custodian of Records
Fortitude Investing, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

    Re:    <u>In the Matter of Certain Leased Instruments (HO-11813)</u>

To Whom It May Concern:

    Pursuant to the March 27, 2012 subpoena issued to Fortitude Investing, LLC in the above-referenced investigation, Fortitude Investing, LLC was required to produce documents to the staff of the Securities and Exchange Commission on or before <u>April 11, 2012</u>.  To date, Fortitude Investing, LLC has not responded to the subpoena.

    Please produce immediately the documents specified in the subpoena.  If you fail to contact me by this <u>Friday, April 20, 2012</u> to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

                        Sincerely,

                        Christopher M. McLean
                        Staff Attorney

# EXHIBIT D



**From:** England, Timothy
**Sent:** Wednesday, April 25, 2012 1:00 PM
**To:** 'Brett Cooper'
**Subject:** RE: March 15, 2012

Please give me a call today or tomorrow at 202-551-4959.  If there is a time we can arrange so we don't miss each other please let me know what works best.  Thanks you.

**From:** Brett Cooper [mailto:brettcooper@live.com]
**Sent:** Tuesday, March 13, 2012 1:21 PM
**To:** England, Timothy
**Subject:** RE: March 15, 2012

Please call me at 6097600325 thank you.

**From:** England, Timothy [mailto:EnglandT@SEC.GOV]
**Sent:** Monday, March 12, 2012 1:02 PM
**To:** Brett Cooper
**Subject:** RE: March 15, 2012

What time should we expect you this Thursday?  You can reach our office through the train station – when you exit the platform into the train station you go the end where McDonald's is located and enter into a corridor that takes you down to an escalator to our main entrance.

**From:** Brett Cooper [mailto:brettcooper@live.com]
**Sent:** Tuesday, February 21, 2012 6:35 PM
**To:** England, Timothy
**Subject:** Re: March 15, 2012

I will look at train schedules and get back to you.


On Feb 21, 2012, at 6:08 PM, "England, Timothy" <EnglandT@SEC.GOV> wrote:

> We will want to be in DC given the timing and that there are three of us who plan to participate.  What time could you start on the 15th?
>
> **From:** Brett Cooper [mailto:brettcooper@live.com]
> **Sent:** Saturday, February 18, 2012 11:19 AM
> **To:** England, Timothy
> **Subject:** Re: March 15, 2012
>
> Ok great thank you.

On Feb 18, 2012, at 11:10 AM, "England, Timothy" <EnglandT@SEC.GOV> wrote:

> That is you responsibility, but we will discuss the logistics. It is possible
> we will meet in our Philadelphia office.
>
> **From:** Brett Cooper [mailto:brettcooper@live.com]
> **Sent:** Friday, February 17, 2012 05:36 PM
> **To:** England, Timothy
> **Subject:** Re: March 15, 2012
>
> That will work. Do you arrange travel and transportation or is that
> my responsibility?
>
> On Feb 17, 2012, at 5:33 PM, "England, Timothy"
> <EnglandT@SEC.GOV> wrote:
>
>> March 15, which is a Thursday, works for us.  Please let
>> us know if you can be available that day.
>>
>> Thanks.

**EXHIBIT E**

| | |
|---|---|
| **From:** | England, Timothy |
| **To:** | brettcooper@live.com |
| **Cc:** | McLean, Christopher |
| **Subject:** | Masrch 27, 2012 subpoenas issued to you and your companies in HO-11813. |
| **Date:** | Tuesday, May 01, 2012 12:03:43 PM |

Mr. Cooper:

Chris McLean and I just left you a voicemail on your cell phone about these subpoenas and the failure to comply with them.  Please listen to our voicemail and contact us immediately.

Thanks,

Tim England

# EXHIBIT F



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL:   (202) 551-4522
FACSIMILE:   (202) 772-9228
EMAIL:   MCLEANC@SEC.GOV

May 4, 2012

**Via Personal Service and First Class Mail**
Brett Cooper
Custodian of Records:
Dream Holdings, LLC
FII-Ltd.
Fortitude Investing, LLC
Global Funding Systems, LLC
Muse of Dreams, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:   In the Matter of Certain Leased Instruments (SEC File No.: HO-11813)

Mr. Cooper:

As you are aware, on March 28, 2012 the staff of the Enforcement Division of the U.S. Securities and Exchange Commission served subpoenas on you and five companies that you control and/or with which you are affiliated: Dream Holdings, LLC; FII-Ltd.; Fortitude Investing, LLC; Global Funding Systems, LLC; and Muse of Dreams, LLC (the "Cooper Companies.") The subpoenas required you and the Cooper Companies to produce documents to the staff on or before April 11, 2012, and you were required to appear at the Commission for testimony on April 25, 2012. You and the Cooper Companies failed to respond to the subpoenas, and you failed to appear for testimony.

On April 17, 2012, after the due date for producing the documents had passed, the staff sent you and each of the Cooper Companies a letter requesting the immediate production of the documents specified in the subpoena and requesting that you contact me by Friday April 20, 2012 to seek an acceptable extension of the document production. After making at least four attempts to deliver these letters to your home address where we had served the subpoenas, UPS returned the letters to the staff. They are enclosed herein.

On April 25, 2012, Tim England sent you an e-mail requesting that you call him. On May 1, 2012, Mr. England and I attempted to reach you on your cell phone, and Mr. England left you a voicemail and sent you an e-mail requesting that you contact us immediately regarding our

subpoenas and your failure to comply with them.  To date, you have failed to respond to our voicemail and emails.

This is our last attempt to reach you to obtain your compliance with the subpoenas.  You and the Cooper Companies should produce immediately the documents specified in the subpoenas.  If you fail to contact me by this <u>Wednesday, May 9, 2012,</u> to seek an acceptable extension of the document production required by the subpoenas and to discuss re-scheduling your testimony, we intend to file an action in U.S. District Court to enforce the subpoenas.

Sincerely,

Christopher M. McLean
Staff Attorney



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL:  (202) 551-4522
FACSIMILE:  (202) 772-9228
EMAIL:  MCLEANC@SEC.GOV

April 17, 2012

<u>**Via UPS**</u>
Brett Cooper
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:   In the Matter of Certain Leased Instruments (HO-11813)

Mr. Cooper:

Pursuant to the March 27, 2012 subpoena issued to you in the above-referenced investigation, you were required to produce documents to the staff of the Securities and Exchange Commission on or before April 11, 2012, and you are required to appear at the Commission for testimony on April 25, 2012.  To date, you have not responded to the subpoena.

Please produce immediately the documents specified in the subpoena and contact me to discuss your testimony.  If you fail to contact me by this Friday, April 20, 2012 to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

Sincerely,

Christopher M. McLean
Staff Attorney



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

DIVISION OF
ENFORCEMENT

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE: (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

April 17, 2012

**Via UPS**
Custodian of Records
Muse of Dreams, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:    In the Matter of Certain Leased Instruments (HO-11813)

To Whom It May Concern:

Pursuant to the March 27, 2012 subpoena issued to Muse of Dreams, LLC in the above-referenced investigation, Muse of Dreams, LLC was required to produce documents to the staff of the Securities and Exchange Commission on or before April 11, 2012.  To date, Muse of Dreams, LLC has not responded to the subpoena.

Please produce immediately the documents specified in the subpoena.  If you fail to contact me by this Friday, April 20, 2012 to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

Sincerely,

Christopher M. McLean
Staff Attorney



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE: (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

**DIVISION OF**
**ENFORCEMENT**

April 17, 2012

<u>**Via UPS**</u>
Custodian of Records
FII-Ltd
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:    <u>In the Matter of Certain Leased Instruments (HO-11813)</u>

To Whom It May Concern:

Pursuant to the March 27, 2012 subpoena issued to FII-Ltd in the above-referenced investigation, FII-Ltd was required to produce documents to the staff of the Securities and Exchange Commission on or before <u>April 11, 2012</u>. To date, FII-Ltd has not responded to the subpoena.

Please produce immediately the documents specified in the subpoena.  If you fail to contact me by this <u>Friday, April 20, 2012</u> to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

Sincerely,

Christopher M. McLean
Staff Attorney



**DIVISION OF
ENFORCEMENT**

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
**100 F STREET, NE**
**WASHINGTON, DC 20549**

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: **(202) 551-4522**
FACSIMILE:  **(202) 772-9228**
EMAIL: MCLEANC@SEC.GOV

April 17, 2012

**Via UPS**
Custodian of Records
Fortitude Investing, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

Re:     <u>In the Matter of Certain Leased Instruments (HO-11813)</u>

To Whom It May Concern:

Pursuant to the March 27, 2012 subpoena issued to Fortitude Investing, LLC in the above-referenced investigation, Fortitude Investing, LLC was required to produce documents to the staff of the Securities and Exchange Commission on or before <u>April 11, 2012</u>. To date, Fortitude Investing, LLC has not responded to the subpoena.

Please produce immediately the documents specified in the subpoena. If you fail to contact me by this <u>Friday, April 20, 2012</u> to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

Sincerely,

Christopher M. McLean
Staff Attorney



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

DIVISION OF
ENFORCEMENT

CHRISTOPHER M. MCLEAN
STAFF ATTORNEY
DIRECT DIAL: (202) 551-4522
FACSIMILE: (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

April 17, 2012

**Via UPS**
Custodian of Records
Dream Holdings, LLC
229 Carriage Hill Drive
Moorestown, NJ 08057

      Re:     In the Matter of Certain Leased Instruments (HO-11813)

To Whom It May Concern:

      Pursuant to the March 27, 2012 subpoena issued to Dream Holdings, LLC in the above-referenced investigation, Dream Holdings, LLC was required to produce documents to the staff of the Securities and Exchange Commission on or before April 11, 2012. To date, Dream Holdings, LLC has not responded to the subpoena.

      Please produce immediately the documents specified in the subpoena. If you fail to contact me by this Friday, April 20, 2012 to seek an acceptable extension of the document production required by the subpoena, we intend to take the steps necessary to enforce the subpoena.

                    Sincerely,

                    Christopher M. McLean
                    Staff Attorney

.

# EXHIBIT G



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, NE
WASHINGTON, DC 20549

DIVISION OF
ENFORCEMENT

CHRISTOPHER M. MCLEAN
SENIOR COUNSEL
DIRECT DIAL:  (202) 551-4522
FACSIMILE:   (202) 772-9228
EMAIL: MCLEANC@SEC.GOV

July 25, 2012

**Via Process Server**
Brett Cooper
1609 Larchmont Place
Mount Laurel, NJ 08054

Re:    In the Matter of Certain Leased Instruments (HO-11813)

Mr. Cooper:

As you are aware, on March 28, 2012 the staff of the Securities and Exchange
Commission served subpoenas on you and several companies that you control and/or with which
you are affiliated: Dream Holdings, LLC, FII-Ltd., Fortitude Investing, LLC, Global Funding
Systems, LLC, and Muse of Dreams, LLC (the "Cooper Companies").  The subpoenas required
you and the Cooper Companies to produce documents to the staff on or before April 11, 2012,
and you were required to appear at the Commission for testimony on April 25, 2012.  You and
the Cooper Companies failed to respond to the subpoenas, and you failed to appear at the
Commission for testimony.

On April 17, 2012, the staff sent you and each of the Cooper Companies a letter
demanding immediate production of the documents specified in the subpoena and requesting that
you contact me by Friday April 20, 2012 to seek an acceptable extension of the document
production.  After making at least four attempts to deliver these letters to your home address,
UPS returned the letters to the staff.

On April 25, 2012, Timothy England sent you an e-mail at brettcooper@live.com
requesting that you call him by the following day.  On May 1, 2012, Mr. England and I
attempted to reach you on your cell phone (609-760-0325), and Mr. England left you a voicemail
requesting that you contact the staff immediately to discuss your and your companies' failure to
produce documents and your failure to appear for testimony.  Mr. England further stated that the
staff intended to take steps to enforce the subpoenas if you failed to contact us.  Mr. England also
sent you an e-mail on May 1, 2012 stating that he left a voicemail for you regarding your and
your companies' failure to comply with the subpoenas and that you should contact the staff
immediately.  To date, you have failed to respond to our voicemail and emails.

We request that you and the Cooper Companies produce immediately the documents specified in the subpoenas.  If you fail to contact me by Friday, August 3, 2012 to seek an acceptable extension of the document production required by the subpoena and to discuss re-scheduling your testimony, we intend to proceed with seeking to enforce the subpoenas, which may include filing a civil action against you.

Sincerely,

Christopher M. McLean
Senior Counsel

# EXHIBIT H

# CAPITOL PROCESS SERVICES, INC.

1827 18th Street, NW
Washington, DC 20009-5526
Phone: (202) 667-0050
Fax: (202) 667-2520
info@capitolprocess.com
www.capitolprocess.com

Christopher M. McLean, Staff Attorney
Securities and Exchange Commission
100 F Street, NE, Stop 6720
Washington, DC 20549

**INVOICE:** 12-078947
8/7/2012
Days Past Due: **0**

---

**Job ID:** 12-078947
**Case No.:** HO-11813
**Plaintiff:** In the Matter of: Certain Leased Instruments
**Defendant:**
**Serve To:** Brett Cooper
**Location:** 1609 Larchmont Place, Mount Laurel, New Jersey 08054

**Reference:** N/A

**Completed** 7/27/2012
6:36 PM

| Item | Qty. | Unit | Total |
|------|------|------|-------|
| Courier Service | 1 | $15.00 | $15.00 |
| Service of Process - RUSH (out of state) | 1 | $190.00 | $190.00 |
| | | **Sub-Total** | **$205.00** |
| | | **Total Fees** | **$205.00** |
| | | **Payment -** | |
| | | **Balance Due** | **$205.00** |

**Thank You!**

Balance due upon receipt. Please provide the invoice number on your check.

**FEIN:** 52-2283731

Tuesday, August 07, 2012

Page 1 of 1

In the Matter of: Certain Leased Instruments                )
                                                            )
                                                            )
                                                            )
                                                            )  Case No.: HO-11813
                                                            )
                                                            )
                                                            )
                                                            )
                                                            )
                                                            )

## AFFIDAVIT OF SERVICE

I, Douglas Bramble, a Private Process Server, being duly sworn, depose and say, I have been duly authorized to make service of the following of documents listed herein in the above entitled case:

Letter dated July 25, 2012

That I am over the age of eighteen years and am not a party to or otherwise interested in this matter.

That on July 27, 2012 at 6:36 PM, I served Brett Cooper the within Letter dated July 25, 2012 at 1609 Larchmont Place, Mount Laurel, New Jersey 08054 by serving Brett Cooper, personally.

Brett Cooper is described herein as:
Gender: Male     Race/Skin: White     Hair: Brown     Age: 45-50     Height: 6'0"     Weight: 260

I do solemnly declare and affirm under penalty of perjury that the information set forth herein is correct to the best of my knowledge, information and belief.

Douglas Bramble
CAPITOL PROCESS SERVICES, INC.
1827 18th Street, NW
Washington, DC 20009-5526
(202) 667-0050

Subscribed and sworn to before me, a notary public, on this _____1_____ day of August, 2012.

_____
Notary Public                                    My Commission Expires:     MARIA WEINGARTNER
                                                                            NOTARY PUBLIC OF NEW JERSEY
                                                                            Commission Expires 3/14/2013

ID: 12-078947                                                                        Client Reference: N/A